**EFiled: Jul 09 2015 03:46PM EDT**
**Transaction ID 57527989**
**Case No. 7369-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

July 9, 2015

R. Judson Scaggs, Jr., Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

Kevin M. Gallagher, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re: *Cyber Holding LLC v. CyberCore Holding, Inc.*
C.A. No. 7369-VCN
Date Submitted: April 28, 2015

Dear Counsel:

Plaintiff Cyber Holding LLC ("Seller")[1] brings claims seeking tax-related payments under the agreement governing the sale of CyberCore Corporation (the "Company") to Defendant CyberCore Holding, Inc. ("Buyer") which has moved for summary judgment.

\*\*\*\*\*

Buyer and Seller executed the Redemption and Stock Purchase Agreement By and Among CyberCore Corporation, CyberCore Holding, Inc. and the

---

[1] There were other sellers, but Cyber Holding LLC is the named plaintiff.

Stockholders of CyberCore Corporation (the "Agreement") on June 8, 2011.[2] The Company claimed deductions for transaction-related expenses (the "Transaction Deductions") for the tax year from January 1, 2011, to July 8, 2011 (the "Stub Year"). Because of the deductions, the Company reported a net operating loss for the Stub Year, escaped over $1 million in 2011 income tax liability, received a $214,166 refund for prepaid estimated 2011 taxes, and obtained over $3 million in income tax refunds for 2009 and 2010 by carrying back the net operating loss.[3] Buyer has remitted to Seller refunds for the estimated prepaid taxes and the 2009 and 2010 taxes. Seller brings this action to recover $1,557,171 (the "Avoided Tax") pursuant to Section 6.5(f)(z) of the Agreement.[4] On this motion, the parties have framed a dispute over contract interpretation.

---

[2] Verified Compl. Ex. A ("SPA"). The sale of the Company closed in July 2011.

[3] There is no active dispute over these basic facts. *See* Def.'s Opening Br. in Supp. of Its Mot. for Summ. J. (Def.'s Opening Br.") 5, 7-8; Pl.'s Opp'n to Def. CyberCore Holding, Inc.'s Mot. for Summ. J. ("Pl.'s Opp'n Br.") 11-12.

[4] The Avoided Tax represents "the amount by which the Transaction Deductions reduced the Company's 2011 taxes beyond the amount of the 2011 refund." Pl.'s Opp'n Br. 2. The amount of the Avoided Tax has been revised in pre-trial discussions.

*****

Summary judgment on an issue of contract interpretation is appropriate only where the moving party can show that its interpretation "is the *only* reasonable interpretation."[5] When interpreting a contract, the Court first looks for the objective meaning of the parties' agreement, "giving effect to all provisions therein."[6] However, "an ambiguity exists when the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[7]

*****

The key inquiry on this motion is whether the parties' negotiated agreement is ambiguous. The parties direct the Court's attention to a few key provisions. First and foremost, Section 6.5(f), and subsection 6.5(f)(z) in particular, is the source for the claimed right to taxes avoided in the Stub Year:

---

[5] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007). The Court will not examine arguments on subjects beyond the ambiguity of the text of the Agreement.

[6] *GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (internal quotation marks omitted).

[7] *Id.* at 780 (alteration and internal quotation marks omitted).

(f) To the extent (x) any Transaction Deductions are not properly deductible in the Tax year that ends on or includes the Closing Date and are properly deductible in a Tax year beginning after the Closing Date . . . by the Buyer . . . , (y) after the application of Sections 6.5(d) and (e) the Company or any Company Subsidiaries has a net operating loss carryforward that is attributable to the Transaction Deductions . . . , or (z) Transaction Deductions claimed in the Tax year ending on or including the Closing Date result in a reduction of Taxes for that Tax year in excess of the amount paid to Sellers pursuant to Sections 6.5(d) and (e), then Buyer . . . shall pay to the Sellers' Representative . . . an amount equal to the amount by which (i) the amount of Taxes that the Buyer, the Company and its Subsidiaries . . . would have been required to pay in the Tax year in question but for the deduction or the Carryforward of the Transaction Deductions . . . exceeds (ii) the amount of Taxes actually payable by the Buyer, the Company and its Subsidiaries . . . with respect to such Tax years (and in the case of payments pursuant to clause (z) above, solely to the extent such amount is in excess of the amount paid to Sellers pursuant to Sections 6.5(d) and (e)).[8]

The dispute boils down to whether the references to an amount "in excess of the amount paid to Sellers pursuant to Sections 6.5(d) and (e)" mean in excess of (1) the total amount paid pursuant to those sections (including the remittances for 2009 and 2010) or (2) the amount paid pursuant to those sections with respect to the Stub Year alone. If the first interpretation is correct, as Buyer posits, Buyer has already paid Seller over $3 million, which exceeds the amount of the Avoided Tax

---

[8] SPA § 6.5(f) (emphases omitted).

(approximately $1.56 million).  If the second, or Seller's, interpretation is correct,

Buyer owes Seller the amount of the Avoided Tax.

Sections 6.5(d) and 6.5(e), to which the parties also ascribe different

meanings,[9] state (in relevant part):

> (d)  To the extent that the Company has paid estimated income Taxes for the Tax year ending on or including the Closing Date and the amount of the estimated income Taxes which were paid prior to the Closing Date exceeds the amount of the income Tax liability with respect to such Tax year (taking into account the Transaction Deductions, to the extent permitted by law, for which such estimated income Taxes were paid, Buyer shall . . . prepare . . . [state and federal forms for refunds of overpayment of estimated taxes] with respect to such Tax year. . . . Within five Business Days of the receipt . . . of a refund . . . , Buyer shall pay an amount equal to such refund . . . to the Sellers' Representative . . . .[10]

> (e)  To the extent that the Company would have a net operating loss for the Tax year ending on or including the Closing Date, Buyer shall prepare . . . any claim for refund of Taxes . . . with respect to such Tax year, including a claim for refund or amended Tax Return to effect a carryback to a prior year of any loss generated or otherwise attributable to the Tax year ending on or including the Closing Date . . . to the fullest extent permitted by Law. . . . Within five Business Days of the receipt . . . of a refund as a result of such a refund claim, Buyer shall pay to the Sellers' Representative . . . an amount equal to (i) the amount by which (A) the amount of the refund actually received exceeds (B) the amount of the refund that would

---

[9] *See, e.g.*, Oral Arg. Def.'s Mot. for Summ. J. Tr. ("Oral Arg. Tr.") 23, 40-41.
[10] SPA § 6.5(d).

have been received had the refund been determined without taking into account any Deductible Expense Carrybacks; minus (ii) the income Taxes actually payable by the Company as a result of the receipt of such refunds for the year of receipt.[11]

Buyer argues that Seller's year-by-year interpretation is not supported by the text and cannot be correct because the net operating loss taken in the Stub Year cannot be "carried back" to the same year—essentially nullifying the reference to 6.5(e).[12] Seller counters that Section 6.5(f)(z)'s references to the "Tax Year ending on or including the Closing Date";[13] references to an "amount paid" rather than *amounts* paid;[14] logic;[15] and the totality of Sections 6.5(d), (e), and (f) (ensuring it benefits from the Transaction Deductions for the periods preceding, during, and after the Stub Year)[16] support its reading. Seller further alleges (although not purely a contractual argument) that the Transaction Deductions were

---

[11] SPA § 6.5(e) (emphasis omitted).

[12] Def.'s Opening Br. 14-16. Seller responds that Section 6.5(e) also applies "to refunds of prepaid estimated taxes *for the 2011 tax year*." Pl.'s Opp'n Br. 20-21.

[13] Pl.'s Opp'n Br. 15-16 (internal quotation marks omitted).

[14] *Id.* at 20 n. 3.

[15] *Id.* at 19-20.

[16] *Id.* at 17. On the other hand, Buyer claims that "Section 6.5(f)(z) operated to provide Sellers with a minimum benefit from the Transaction Deductions . . . ." Def.'s Opening Br. 13.

known to be so large that Section 6.5(f)(z) would never be triggered under Buyer's interpretation.[17]

The parties also cite Sections 6.5(a) and 10.1(a)(iii).  Section 10.1(a), in the article outlining indemnification rights and obligations, generally explains that

> the Company Equity Holders shall . . . indemnify and hold harmless . . . each of the Buyer Indemnified Parties from, against and in respect of any and all Losses arising out of:
> . . .
> (iii)   any Taxes assessed or imposed upon the Company or any Company Subsidiary that are allocable or attributable to taxable years or periods ending on or prior to the Closing Date or to the portion of any Straddle Period through and including the Closing Date . . . .[18]

Section 6.5(a), within the article outlining covenants, specifies that

> Buyer shall, at its own expense, prepare . . . and timely file . . . all Tax Returns of the Company and the Company Subsidiaries for all periods beginning on or after January 1, 2010 that have not yet been filed and are required to be filed after the Closing Date. . . . Buyer shall cause any amounts shown to be due on such Tax Returns (other than

---

[17] Pl.'s Opp'n Br. 16-17.  In other words, the payments pursuant to Sections 6.5(d) and (e) would necessarily cancel out the Section 6.5(f)(z) obligation.

Of course, Buyer disagrees with Seller's interpretation, citing mixed references to time periods, emphasis on Sections 6.5(d) and (e), and the possibility that Section 6.5(f)(z) could result in payments under fact patterns not present here—among other reasons to adopt its interpretation.  *See, e.g.*, Def.'s Reply Br. in Further Supp. of Its Mot. for Summ. J. 9-10.  Buyer also asks the Court to apply contra proferentem.  *Id.* at 10.

[18] SPA § 10.1(a).

estimated tax payments due prior to the Closing Date) to be timely remitted to the applicable Governmental Entity no later than the date on which such Taxes are due (including extensions).[19]

Buyer claims that Section 10.1(a)(iii) already gives Seller the benefit of the Avoided Tax through indemnification and that a double benefit by Section 6.5(f)(z) does not make sense.[20] Buyer views Section 6.5(a) as simply governing "logistical" matters.[21] Seller, on the other hand, explains that Section 10.1(a)(iii) indemnifies Buyer for "after-the-fact" assessments (such as after an audit), while Section 6.5(a) is a covenant governing the broader division of responsibilities.[22]

A review of the plain language of the Agreement does not lend a clear answer. Seller argues (more generally) that the Agreement's tax provisions were designed to "ensure that Sellers receive the full benefit of the Transaction Deductions."[23] Buyer argues that "[t]he sellers [we]re obligated to pay the pre-

---

[19] SPA § 6.5(a).

[20] Def.'s Opening Br. 16-17.

[21] Oral Arg. Tr. 14-15, 58.

[22] Pl.'s Opp'n Br. 21-22 & n.4. Seller adds that Buyer's interpretation would mean that any payment under Section 6.5(f)(z) would result in a double payment. *Id.* at 23.

[23] *Id.* at 17.

closing [taxes], and the buyers [we]re only obligated to pay the post-closing [taxes]."[24]  The Agreement is reasonably susceptible to more than one reading at this point and, thus, is ambiguous.  Additionally, communication between counsel for Buyer and Seller might prove informative.  However skeptical the Court may be that trial will unearth any new evidence, it cannot choose between two interpretations that appear reasonable at this stage.

*****

For the reasons above, the motion for summary judgment is denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K

---

[24] Oral Arg. Tr. 57-58.