GMG CAPITAL INVESTMENTS, LLC, a Delaware Limited Liability Company, GMG Capital Partners III, L.P., a Delaware Limited Partnership, GMG Capital Partners III Companion Fund, L.P., a Delaware Limited Partnership, and GMS Capital Partners II, L.P., Defendants Below–Appellants,

v.

ATHENIAN VENTURE PARTNERS I, L.P. and Athenian Venture Partners II, L.P., Plaintiffs Below–Appellees.

GMG Capital Investments, LLC, a Delaware Limited Liability Company, GMG Capital Partners III, L.P., a Delaware Limited Partnership, GMG Capital Partners III Companion Fund, L.P., a Delaware Limited Partnership, and GMS Capital Partners II, L.P., Defendants Below–Appellants,

v.

Athenian Venture Partners I, L.P. and Athenian Venture Partners II, L.P., Plaintiffs Below–Appellees.

Nos. 514, 2010, 614, 2010.

Supreme Court of Delaware.

Submitted: Oct. 12, 2011.
Decided: Jan. 3, 2012.

Michael D. Goldman, Esquire, Timothy R. Dudderar, Esquire (argued), Abigail M. LeGrow, Esquire, and Matthew D. Stachel, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware, and Brian P. Fagan, Esquire, Keevican Weiss Bauerle & Hirsh LLC, Pittsburgh, Pennsylvania for Appellants.

R. Judson Scaggs, Jr., Esquire (argued), Leslie A. Polizoti, Esquire, and Karl G. Randall, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Defendants–Below/Appellants GMG Capital Investments, LLC, GMG Capital Partners III, L.P., GMG Capital Partners III Companion Fund, L.P., and GMS Capital Partners II, L.P. (collectively, "GMG"), appeal from a Superior Court opinion and order granting summary judgment in favor of Plaintiffs–Below/Appellees Athenian Venture Partners I, L.P. and Athenian Venture Partners II, L.P. (collectively, "Athenian") in this dispute over the remedy for a breach of contract. GMG also appeals from a Superior Court order awarding Athenian attorneys' fees, costs, and expenses incurred in that action.

GMG contends that the Superior Court erred as a matter of law by granting summary judgment on Athenian's claim for

money damages because the parties' agreement unambiguously provides that Athenian's sole remedy is the pledged securities. Alternatively, GMG contends that the agreement is, at the very least, ambiguous as to the appropriate remedies, so as to preclude an award of summary judgment. With respect to the fee order, GMG contends that if the summary judgment order is reversed, the fee order must also be reversed.

A three-justice panel of this Court heard oral argument on October 12, 2011. After argument, the matter was scheduled for rehearing and determination by the Court *en Banc* on the briefs. We find the parties' agreement to be ambiguous and hold that the ambiguity precludes an award of summary judgment. Thus, we reverse and remand both matters for further proceedings.

### Facts and Procedural History

GMG is a venture capital fund that invests in technology and consumer product companies. Athenian is a venture capital fund that invests in information technology and life sciences companies. In 1999, GMG and Athenian both invested in Alloptic, Inc. ("Alloptic"), a start-up company in the technology sector. As a result of their investments at both the initial and subsequent rounds of financing, GMG and Athenian became Alloptic's two largest equity holders. GMG owned approximately sixty percent of Alloptic, which was likely GMG's largest investment. Athenian owned approximately ten percent of Alloptic, having invested approximately $8.5 million.

In 2005, Alloptic was suffering financially and struggling to meet its projections. A downturn in the venture capital market made it difficult for Alloptic to obtain financing from new or existing investors. GMG approached Ritchie Capital Manage-ment ("Ritchie") to discuss a potential investment. Ritchie agreed to invest in Alloptic, but conditioned its investment on bringing in a new board of directors. That condition meant that GMG and Athenian would have to relinquish their board seats. Athenian had a contractual right to its board seat and initially refused to accept Ritchie's condition.

GMG and Athenian then negotiated for the sale of Athenian's Alloptic stock to GMG, in a deal that would enable GMG to offer Athenian's board seat to Ritchie. The parties ultimately reached an agreement (the "Agreement"), which consisted of four documents: a Term Sheet, a Letter Agreement to Purchase Equity in Alloptic, a Limited Recourse Note (the "Note"), and a Pledge Agreement. Under the Agreement, Athenian pledged its Alloptic securities (the "Pledged Securities") in exchange for the Note, whose principal amount was $6,000,000. The Pledged Securities were held in escrow. As part of the Agreement, GMG would make monthly payments of $15,000 of principal on the Note to Athenian (the "Mandatory Payments") if one of two events occurred. Specifically, the Note states that the Mandatory Payments must begin on the first full month of the earlier of "(i) the date upon which there are subscriptions for $200,000,000 for investments in GMG Capital Partners IV, L.P. (as defined below) or (ii) the date of the final closing of all investments in GMG Capital Partners, IV, L.P." [1]

The parties do not dispute that a "Triggering Event" occurred, that obligated GMG to make the Mandatory Payments starting in January 2008. GMG decided not to make those payments for January 2008 or any subsequent month that triggered an "Event of Default" under the Agreement. GMG contends that Athenian's only remedy for this breach of the Agreement is recourse to the Pledged Se-

---

1. Note, at 2.

curities, as set forth in Section 1(g) of the Pledge Agreement. Athenian contends that the Agreement permits an election of remedies, one of which is money damages for failure to make the Mandatory Payments.

Athenian filed suit against GMG in the Superior Court for money damages and a declaratory judgment that GMG breached the Note by failing to make the Mandatory Payments. The parties conducted discovery, including the depositions of transaction counsel. Athenian then moved for summary judgment. The Superior Court granted summary judgment from the bench after oral argument. The Superior Court later issued a written order confirming that ruling, and awarding attorneys' fees.

GMG appealed the summary judgment award. That appeal was consolidated with GMG's appeal of the Superior Court order awarding attorney's fees to Athenian. Oral argument before this Court was scheduled for January 12, 2011. Before oral argument, this Court remanded the matter, directing the Superior Court to express in a supplemental written opinion the specific reasons why it concluded that the Agreement was unambiguous and that Athenian's interpretation of the relevant provisions was correct as a matter of law.

On April 19, 2011, the Superior Court issued a revised supplemental opinion in favor of Athenian. The parties then submitted supplemental memoranda, and oral argument was held before a three-justice panel of the Court. The panel decided to schedule the matter for rehearing and determination by the Court *en Banc* on the briefs. This is the Court's decision on the consolidated appeal.

### Analysis

GMG argues that the unambiguous Agreement language establishes that Athenian's sole remedy is the Pledged Securities. Alternatively, GMG argues if the Court does not find the Agreement unambiguous, GMG's interpretation of the Agreement is at least as reasonable as Athenian's, precluding an award of summary judgment.

We review the Superior Court's grant of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[2] We review questions of contract interpretation *de novo*.[3]

### A. The Agreement Is Ambiguous as to Remedies

When interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement.[4] "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."[5] The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan.[6]

---

2. *State Farm Mut. Auto. Ins. Co. v. Patterson,* 7 A.3d 454, 456 (Del.2010) (quoting *Brown v. United Water Delaware, Inc.,* 3 A.3d 272, 275 (Del.2010)).

3. *Paul v. Deloitte & Touche, LLP,* 974 A.2d 140, 145 (Del.2009) (citing *Motorola, Inc. v. Amkor Tech., Inc.,* 958 A.2d 852, 859 (Del. 2008)).

4. *Paul,* 974 A.2d at 145.

5. *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (1985).

6. *Id.*

The Court will interpret clear and unambiguous terms according to their ordinary meaning.[7] "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[8] "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction."[9] Rather, an ambiguity exists "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[10] Where a contract is ambiguous, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions."[11]

### 1. The Relevant Agreement Provisions

Here, the parties each rely upon various provisions of the Agreement to argue that the Agreement is unambiguous and supports their respective interpretations. GMG's argument rests in large part on Section 1 of the Pledge Agreement. Section 1(e) provides that:

> At any time after a breach or default occurs under the Note or this Agreement (an "Event of Default"), [Athenian] may deliver to the Pledge Agent and [GMG] a certificate which certifies that an Event of Default has occurred and describes the nature of the Event of Default.[12]

That section then provides for Athenian to receive the Pledged Securities and, if Athenian so chooses, to dispose of them. Section 1(g) sets forth the distribution of any proceeds that Athenian receives from such a disposition of the Pledged Securities. Section 1(g) states in relevant part:

> [I]t being understood that [GMG] shall not be in any way liable for any deficiency between the amount of the proceeds of the Pledged Securities and the aggregate amount of the sums referred to in clauses (i) and (ii) of this subsection (g), *it being understood that [Athenian's or its nominee's] sole remedy for payment of the Secured Obligations is the Pledged Securities pledged under this Agreement; . . .*[13]

Section 1 then sets forth specific carve-outs from the "sole remedy" requirement. The term "Secured Obligations" is defined in Section 1(b) of the Pledge Agreement as follows:

> The Pledged Securities and the liens and security interests granted to [Athenian] pursuant to this Agreement secure and shall hereafter secure the prompt and full payment and performance of *all obligations of [GMG] under the Note,* and any extensions, renewals or replacements therefor, and all obligations of [GMG] under this Agreement and under the Term Agreement (collectively, the "Secured Obligations").[14]

It is an undisputed that an "Event of Default" occurred under Section 1(e) when

---

7. *Paul,* 974 A.2d at 145 (citing *Lorillard Tobacco Co. v. Am. Legacy Found.,* 903 A.2d 728, 739 (Del.2006); *Rhone–Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992)).

8. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del.1997).

9. *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992)

10. *Eagle Indus.,* 702 A.2d at 1232.

11. *Id.*

12. Pledge Agreement § 1(e) (emphasis added).

13. *Id.* § 1(g) (emphasis added).

14. *Id.* § 1(b) (emphasis added)

GMG failed to make the mandatory payments. It is also undisputed that Athenian did not provide notice of an Event of Default, which was a predicate to exercise its rights to the Pledged Securities under that Section. GMG contends that the sole remedy clause in Section 1(g), read in conjunction with the definition of Secured Obligations in Section 1(b), precludes an alternative remedy of money damages for the "Event of Default." Consequently, under GMG's interpretation, Athenian has no remedy here.

Athenian argues, and the Superior Court held, that although Athenian may elect the Pledged Securities as a remedy for failure to pay the Mandatory Payments, the Pledge Agreement does not preclude the alternative remedy of money damages. Athenian's interpretation rests largely on the following Note provision:

> *Notwithstanding anything to the contrary in this Note,* the Makers *shall* make monthly payments of Fifteen Thousand Dollars ($15,000) of principal on this Note (the "Mandatory Payments") beginning on the first full month following the earlier to occur of (i) the date upon which there are subscriptions for $200,000,000 for investments in GMG Capital Partners IV, L.P. (as defined below) or (ii) the date of the final closing of all investments of GMG Capital Partners, IV, L.P.
>
> \* \* \*
>
> The Payees and any subsequent holder of this Note by acceptance of this Note agree that this is a limited recourse obligation and, *except as otherwise provided in the Pledge Agreement and except as otherwise provided herein with respect to the Mandatory Payments,* payment of principal and interest under

this Note is limited to the Pledged Property and proceeds thereof. . . . [15]

Thus, the Note appears to carve out the Mandatory Payments from the otherwise limited-recourse nature of the obligation.

The Pledge Agreement also states that the "rights and remedies" provided in the Pledge Agreement, the Note, and all related documents are "cumulative." [16] The Note similarly refers to "any right or remedy hereunder or under the Pledge Agreement." [17] Athenian and the Superior Court rely on these provisions to argue that the Agreement contemplates a remedy other than the Pledged Securities.

Finally, the Term Sheet states that the Mandatory Payments "shall continue until such time that there is a Liquidation" of Alloptic.[18] The Note and Pledge Agreement, however, are silent on the continuation of the Mandatory Payments. The Letter Agreement, dated three days after the Term Sheet, provides that any conflict between the Term Sheet and the Note or Pledge Agreement should be resolved in favor of the Note or Pledge Agreement. The Agreement does not state which document controls in case of a conflict between the Note and the Pledge Agreement.

### 2. The Agreement Is Ambiguous

█ GMG and Athenian each contend that they have offered the only reasonable interpretation of the Agreement regarding Athenian's remedies for a breach. As discussed below, this Court finds that both interpretations are reasonable and that therefore, the Agreement is ambiguous.

GMG's interpretation is reasonable. That interpretation gives maximum effect to the "sole remedy" language of Section 1(g). A "sole remedy" provision, by its

---

15. Note, at 2 (emphasis added).

16. Pledge Agreement § 7(e).

17. Note, at 2.

18. Term Sheet, at 1.

plain terms, may preclude an award of other damages.[19] Athenian's discretion in triggering the mechanism to obtain this remedy does not, by itself, require that another remedy also be available. Moreover, nothing in the Agreement plainly states that Athenian is entitled to monetary damages for failure to make the Mandatory Payments. The Agreement does speak in general terms of "rights" and/or "remedies" under the Note. But, the only remedy explicitly referred to in the Agreement is recourse to the Pledged Securities as set forth in Section 1(g).

GMG's interpretation does not render the Note's carve-out meaningless. The Note excepts the Mandatory Payments from the requirement that "payment of principal and interest under this Note is limited to the Pledged Property and proceeds thereof." But, if GMG had chosen to make the Mandatory Payments, those payments indeed would have been an exception to Athenian's otherwise limited recourse to the Pledged Securities. Thus, the clause may be read to treat the Mandatory Payments as an obligation, but not as a remedy for breach of the Agreement.

Athenian's interpretation is also reasonable. Section 1(g) of the Pledge Agreement does not plainly provide that the Pledged Securities are the sole remedy for any breach of the Agreement. The language describing the Pledged Securities as the "sole remedy" exists within a sentence specifying the distribution of proceeds if a disposition of the Pledged Securities occurs. GMG concedes that the first part of the sentence is irrelevant absent notice of an Event of Default and a disposition of the Pledged Securities. But, GMG argues that the "sole remedy" clause contained in the second part of the sentence still controls Athenian's remedies for any breach of the Agreement. Stretching the "sole remedy" clause to cover obligations under the Note is difficult, however, where the clause is couched in seemingly irrelevant language. One would expect the "sole remedy" language to exist in a separate clause if the parties' intended it to cover *any* breach of the Agreement. Thus, the sole remedy clause does not manifest a clear intent of both parties for the Pledged Securities to be Athenian's sole remedy for a breach of the Mandatory Payment provision. Rather, the clause can be read to provide that—*if* Athenian chooses to elect the mechanism set forth in Section 1(e)— Athenian's recourse is limited to the Pledged Securities.

The Agreement also states that GMG "shall" make the Mandatory Payments, and specifically excepts those payments from the otherwise limited-recourse nature of the obligation. This language makes it even more difficult to read the Pledge Agreement's sole remedy clause, which is triggered by a discretionary act, as trumping the Note.[20] The fact that Athenian "may" seek the Pledged Security remedy by giving notice does not, in itself, preclude Athenian from seeking a different remedy through a separate mechanism.[21]

---

19. *See Related Westpac LLC v. JER Snowmass LLC*, 2010 WL 2929708, at *7 (Del.Ch. July 23, 2010) (holding that provision providing that party's "sole remedy" shall be set forth in Operating Agreement precluded claim for money damages and stating that "[t]he Operating Agreements clearly spell[ed] out Related's sole remedy, which it was free to exercise").

20. *See Miller v. Spicer*, 602 A.2d 65, 67 (Del. 1991) (when construing statute, "shall" generally signals mandatory requirement while "may" is permissive).

21. *See Kirby v. Kirby*, 1987 WL 14862, at *4 (Del.Ch. July 29, 1987) (finding use of word "may" in certificate of incorporation permitted existing members to elect new members, but did not thereby preclude directors from also electing new members).

Athenian's interpretation also aligns with the Agreement's reference to multiple "rights" and "remedies" under the Note and Pledge Agreement.

### B. Because the Agreement Is Ambiguous, the Superior Court Erred By Granting Summary Judgment

 Having found the Agreement ambiguous, we now must determine if the ambiguity precludes an award of summary judgment. Summary judgment is a harsh remedy that affects a party's substantive rights. It must be cautiously invoked, and is not a mechanism for resolving contested issues of fact.[22] Rather, summary judgment may only be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[23] As Wright, Miller & Kane explain in their influential treatise: "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion but only is empowered to determine whether there are issues to be tried."[24]

 This Court has long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous.[25] In such cases, the parol evidence rule bars the admission of evidence from outside the contract's four corners to vary or contradict that unambiguous language.[26] But, where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence.[27] In those cases, summary judgment is improper. For example, in *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, this Court reversed a grant of summary judgment in a dispute over the interpretation of an indemnification provision.[28] We found the provision ambiguous, and explained that the Court of Chancery, as factfinder, had to consider extrinsic evidence:

> If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity. But when there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in

---

**22.** *See Williams v. Geier*, 671 A.2d 1368, 1389 (Del.1996).

**23.** Del.Super. Ct. Civ. R. 56.

**24.** 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2712 (3d ed.1998) (discussing federal counterpart to Del.Super. Ct. Civ. R. 56).

**25.** *See Western Natural Gas Co. v. Cities Service Gas Co.*, 223 A.2d 379, 383–84 (Del.1966) (affirming summary judgment after finding contract had only one reasonable meaning); *Greggo v. Wohl*, 241 A.2d 522, 523 (Del.1968) (affirming summary judgment where provisions at issue were unambiguous and thus parol evidence unnecessary); *Novellino v. Life Ins. Co. of North America*, 216 A.2d 420, 423 (Del.1966) (affirming summary judgment where contract language was plain on its face).

**26.** *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997).

**27.** *Id. See* Lawrence M. Solan, *Pernicious Ambiguity in Contracts and Statutes*, 79 Chi.-Kent L.Rev. 859, 862 (2004) ("If a contract is clear, then resorting to extrinsic evidence that might undermine the plain language of the agreement is barred by the parol evidence rule. When, in contrast, contractual texts are deemed ambiguous, the resolution of the ambiguity becomes a trial issue for the jury. Thus, a court acts as a gatekeeper in making its initial inquiry into whether an ambiguity exists."); *United Rentals, Inc.*, 937 A.2d at 841–42 (discussing same).

**28.** 702 A.2d 1228, 1232 (Del.1997).

order to arrive at a proper interpretation of contractual terms. This task may be accomplished by the summary judgment procedure in certain cases where the moving party's record is not *prima facie* rebutted so as to create issues of material fact. If there are issues of material fact, the trial court must resolve those issues as the trier of fact.[29]

More recently, in *Motorola, Inc. v. Amkor Technology, Inc.*, we recognized that summary judgment is inappropriate under Illinois law where the contractual language "is susceptible to more than one meaning or is obscure in meaning through indefiniteness of expression."[30] This holding is in accord with Delaware law. We reaffirm that, in a dispute over the proper interpretation of a contract, summary judgment may not be awarded if the language is ambiguous and the moving party has failed to offer uncontested evidence as to the proper interpretation.

Here, the parties' Agreement is susceptible to two equally reasonable, but conflicting, interpretations. That gives rise to an unresolved issue of material fact that renders summary judgment inappropriate. Extrinsic evidence, such as prior communications and course of dealing, must be considered by the factfinder to resolve the ambiguity as to Athenian's remedy. Accordingly, the Superior Court erred in holding that the Agreement was unambiguous and in granting summary judgment in favor of Athenian.

## C. The Attorney's Fees Award Must Be Remanded

GMG and Athenian agree that if this Court reverses the Superior Court's summary judgment order, the Court must also remand the fee order. The Term Sheet states that "[GMG] will reimburse the actual legal fees and expenses incurred by [Athenian] in connection with enforcing this Term Sheet or any of the documents and agreements contemplated hereby."[31] Because the summary judgment order should be reversed and remanded, the fee order should also be reversed and remanded.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Opinion.

---

**29.** *Eagle Industries,* 702 A.2d at 1232–33.

**30.** *Motorola,* 849 A.2d at 936 (citing *Meyer v. Marilyn Miglin, Inc.,* 273 Ill.App.3d 882, 210 Ill.Dec. 257, 652 N.E.2d 1233, 1238 (1995) (internal quotations and citations omitted)). Recognizing that *Motorola* reflects principles of Delaware contract law, the Court of Chancery and Superior Court have denied summary judgment to claims under Delaware law where the contract is ambiguous. *See, e.g., BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.,* 2004 WL 1739522, at *5 & n. 27 (Del. Ch. Aug.3, 2004) (applying *Motorola's* summary judgment standard to Delaware contract dispute and noting that "the standards set forth in *Motorola* for contract interpretation under Illinois law do not differ materially from those guiding Delaware courts"); *United*

*Rentals, Inc. v. RAM Holdings, Inc.,* 937 A.2d 810, 830 (Del.Ch.2007) ("[T]he threshold inquiry when presented with a contract dispute on a motion for summary judgment is whether the contract is ambiguous."); *McAnulla Elect. Const., Inc. v. Radius Techs., LLC,* 2010 WL 3792129, at *1 (Del.Super. Sept. 24, 2010) (denying summary judgment where "ambiguous and potentially conflicting provisions of the parties' contract present material disputes regarding their intent"); *Premcor Ref. Group Inc. v. Matrix Serv. Indus. Contractors, Inc.,* 2008 WL 2232641, at *6 (Del.Super.Ct. May 7, 2008) ("Under Delaware Law, where, as here, the issue is contract interpretation, summary judgment is *only* appropriate where the contract is deemed unambiguous.")

**31.** Term Sheet, at 3.