# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THEITSUPPORTCENTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N15C-05-196 ALR |
| | ) | |
| QUALCOMM INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 8, 2016
Decided: September 22, 2016

## MEMORANDUM OPINION

*Upon Plaintiff's Motion for Partial Summary Judgment*
**DENIED**

*Upon Defendant's Motion for Summary Judgment*
**GRANTED**

Brian M. Gottesman, Esq. and David B. Anthony, Esq., Berger Harris LLP, Wilmington, Delaware, Attorneys for Plaintiff.

Peter J. Walsh, Jr., Esq. and Ryan C. Cicoski, Esq., Potter Anderson & Corroon, LLP, Wilmington, Delaware, Attorneys for Defendant.

**ROCANELLI, J.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff theITSupportCenter, LLC ("ITSC") is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. ITSC provides companies with information technology and computer support. Defendant Qualcomm Incorporated ("Qualcomm") is a Delaware corporation with its principal place of business in California. Qualcomm designs and markets wireless telecommunication products and services.

Qualcomm provides its employees with computer support services for commercial software products pursuant to outsourcing contracts with third-party vendors. On April 29, 2014, Qualcomm issued a Request for Information ("2014 RFI") from computer support service providers in anticipation of switching from their then-current vendor. On May 16, 2014, ITSC responded to Qualcomm's 2014 RFI with a written proposal.

Between September and November 2014, Qualcomm and ITSC negotiated a contract in connection with ITSC's bid on the 2014 RFI. On November 21, 2014, Qualcomm and ITSC executed a valid and enforceable contract whereby ITSC agreed to provide Qualcomm with computer support services. Specifically, the contract was titled Purchase Order Statement of Work Number THE-231429 ("Agreement"), and referenced the Qualcomm Standard Purchase Order ("Standard PO"), which is attached to the Agreement as "Exhibit A." The Agreement

1

specifically states that the terms of the Agreement supersede the terms of the Standard PO in the event of a conflict between the two documents. Together, the Agreement and Standard PO define the terms of the contract between the parties, and are referenced hereinafter as "Contract."

On December 1, 2014, Qualcomm issued a Purchase Order pursuant to the Contract in the amount of $250,000 as pre-payment for ITSC's computer support services for a six-month period. The December 1, 2014 Purchase Order was the only purchase order issued in connection with the Contract.

In January 2015, Qualcomm issued another Request for Information ("2015 RFI") to solicit bids from computer support service vendors. ITSC submitted a response to the 2015 RFI which was unsuccessful. Qualcomm entered into a contract for computer support service vendors with a third party.

On April 24, 2015, Qualcomm notified ITSC that the Contract was terminated after the initial six-month term, and that Qualcomm would not issue additional purchase orders for ITSC services during the remaining term of the Contract. Additionally, Qualcomm advised ITSC that Qualcomm would outsource its computer support services to an alternative provider who submitted the successful proposal on the 2015 RFI.

By e-mail dated April 26, 2015, ITSC informed Qualcomm that ITSC interpreted the Contract to require that Qualcomm utilize ITSC as its computer

2

support service provider for a two-year period, the entire term of the Agreement. Accordingly, ITSC contended that Qualcomm's termination after six months represented a breach of contract.

On or about July 1, 2015, Qualcomm discontinued its use of ITSC's computer support services. At that time, although the six-month period covered by the December 2014 $250,000 Purchase Order had concluded, Qualcomm had not utilized the full amount of service time that Qualcomm had purchased in advance for the six-month period.

On May 22, 2015, ITSC filed a complaint against Qualcomm in this Court, asserting claims for declaratory relief and breach of contract for Qualcomm's termination of the Contract. On July 10, 2015, Qualcomm filed an answer and counterclaim against ITSC, seeking a judicial declaration that Qualcomm fulfilled its obligations to ITSC under the Contract. On July 16, 2015, ITSC filed a reply to Qualcomm's counterclaim.

The parties agreed to bifurcate proceedings and jointly requested that the Court first address cross-motions for summary judgment on the issue of contractual liability. Pursuant to the deadlines set forth in the Court's April 18 Scheduling Order, Qualcomm and ITSC filed cross-motions for summary judgment on the issue of liability alone. The parties submitted briefing in support of the cross-

motions and responses thereto.[1] This is the Court's decision on Qualcomm and ITSC's cross-motions for summary judgment on the issue of contractual liability.

## II. LEGAL STANDARDS

### A. Summary Judgment

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[3] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[4] Where the parties have filed cross-motions for summary judgment and both argue that there are no existing issues of material fact, the Court shall treat the motions as a stipulation for decision on the merits based on the record submitted with the motions.[5]

---

[1] As originally submitted, the parties' cross-motions for summary judgment contained separate sets of voluminous appendices, making it difficult for the Court to efficiently assess whether judgment as a matter of law was appropriate. *See* Super. Ct. Civ. R. 1 ("[These Rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every proceeding."). Per the Court's request in its letter dated August 23, 2016, the parties submitted a Joint Statement of Undisputed Material Facts, and a Joint Appendix of documents. Thereafter, briefing was simultaneously resubmitted with page references to the Joint Appendix.
[2] Super. Ct. Civ. R. 56(c).
[3] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).
[4] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[5] Super. Ct. Civ. R. 56(h).

The applicable standard is satisfied here. The parties agree that there are no genuine issues of fact in dispute on the issue of liability.[6] The Court is satisfied that the question of contractual obligations and liability can be decided as a matter of law.

## B.    Contract Interpretation

Delaware law governs the Court's interpretation of the Contract. Under Delaware law, clear and unambiguous contract terms are interpreted according to their ordinary and usual meaning.[7] The Court must "'give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[8] Contract terms themselves will be controlling when they establish common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language.[9] Only where a contract is ambiguous must the interpreting court "look beyond the language of the contract to ascertain the parties' intentions."[10] However, "[a] contract is not rendered ambiguous simply

---

[6] The parties submitted a Joint Statement of Undisputed Material Facts.

[7] *La Grange Communities, LLC v. Cornell Glasgow*, *LLC*, 2013 WL 4816813, at *3 (Del. Sept. 9, 2013); *GMG Capital Invs., LLC v. Athenian Venture Partners I*, *L.P.*, 36 A.3d 776, 780 (Del. 2012).

[8] *Salamone v. Gorman,* 106 A.3d 354, 368 (Del. 2014) (quoting *GMG Capital Invs.*, 36 A.3d at 780).

[9] *Salamone*, 106 A.3d at 368; *Eagle Indus. Inc. v. DeVilbiss Health Care*, 702 A.2d 1228, 1232 (Del. 1997).

[10] *GMG Capital Invs.*, 36 A.3d at 780 (quoting *Eagle Indus. Inc.*, 702 A.2d at 1232).

because the parties do not agree upon its proper construction."[11] Rather, contractual ambiguity exists "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[12]

## III. DISCUSSION

There are no genuine issues of fact in dispute. The Court finds that the Contract's provisions are unambiguous. Therefore, the Contract must be interpreted by its plain and ordinary meaning without reference to extrinsic evidence.[13]

By its ordinary language, the Contract obligates Qualcomm to a "minimum total spend" of $250,000 during an initial six-month term in exchange for ITSC's computer support services.[14] Qualcomm fulfilled this obligation by paying ITSC $250,000 pursuant to a Purchase Order dated December 1, 2014. Under the Contract's plain language, Qualcomm has no further obligation to purchase additional services from ITSC.[15] Rather, the Contract locks Qualcomm into

---

[11] *GMG Capital Invs.*, 36 A.3d at 780 (quoting *Rhone-Poulenc Basics Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[12] *Salamone*, 106 A.3d at 369 (quoting *GMG Capital Invs.*, 36 A.3d at 780).

[13] *Salamone*, 106 A.3d at 367-68; *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010).

[14] Agreement § XIII (". . . Qualcomm hereby commits to a minimum total spend of $250,000 with [ITSC] during the term of this [Contract]."); *Id.* § VI ("Qualcomm's Commitment, as specified in Section XIII below, shall only apply during the (6) month period following the Commencement Date.").

[15] *See id.* § VI.

negotiated terms and discounted billing rates for a two-year period if Qualcomm elects to purchase additional services.[16] Moreover, the Contract expressly states that Qualcomm's maximum liability is limited to amounts that are pre-authorized pursuant to a Qualcomm Purchase Order.[17] The Contract does not permit ITSC to bill Qualcomm for service time unless and until ITSC receives a Qualcomm Purchase Order.[18]

While the Agreement does not address termination, the Standard PO provides that the Contract may be terminated by Qualcomm with no less than two-days' notice.[19] It is undisputed that Qualcomm notified ITSC of the Contract's termination on April 24, 2015, which was acknowledged by ITSC by e-mail dated April 26, 2016. By that time, Qualcomm had already fulfilled its contractual obligation to ITSC to spend a minimum $250,000 for ITSC's services. ITSC's

---

[16] *Id.* § V ("Upon receipt by [ITSC] of Qualcomm's Purchase Order(s) therefor, Qualcomm shall be invoiced $250,000 in advance for Service Time. Qualcomm may elect to purchase additional Service Time in increments of $70,000 each. Service charges will be debited from Qualcomm's Service Time balance based upon the following [scheduled rates] . . .").

[17] *Id.* § XI ("**QUALCOMM'S MAXIMUM LIABILITY FOR SERVICES RENDERED** . . . The total amount of funds under this [Contract] shall be as shown on the provided Purchase Order(s). . . .Under no circumstances shall [ITSC] bill Qualcomm for any Service amounts exceeding the agreed upon budget as pre-authorized in Qualcomm's Purchase Order(s) issued referencing this [Contract].") (emphasis in original).

[18] *See id.*

[19] Standard PO ¶ 16 ("Unless otherwise provided in a written agreement executed by Seller and Buyer, Buyer may terminate any Agreement or any portion thereof upon giving notice to Seller of such termination not less than two (2) business days prior to the earliest applicable Delivery Date set forth in the original Agreement . . .").

April 26, 2016 e-mail acknowledged Qualcomm's intent to terminate the Contract but disputed Qualcomm's ability to terminate.[20]

Qualcomm fulfilled its obligations to ITSC under the unambiguous provisions of the Contract by purchasing $250,000 of ITSC service time during the Contract's initial six-month term. Accordingly, Qualcomm's discontinuance of its utilization of ITSC's computer support services after six months does not constitute a breach of contract.

## IV.  CONCLUSION

There are no genuine issues of fact in dispute. The Contract's provisions are unambiguous. Qualcomm fulfilled its obligations to ITSC by purchasing $250,000 of ITSC service time during the Contract's initial six-month term. Qualcomm was not obligated by the Contract to purchase additional services. The Contract was properly terminated.

**NOW, THEREFORE, this 22nd day of September, 2016, Plaintiff theITSupportCenter, LLC's Motion for Partial Summary Judgment is hereby DENIED, and Defendant Qualcomm Incorporated's Motion for Summary Judgment is hereby GRANTED.  JUDGMENT IS HEREBY ENTERED in**

---

[20] ITSC's claim that the Contract could not be terminated before the conclusion of two years is undermined by the undisputed fact that ITSC submitted a response to Qualcomm's 2015 RFI by which Qualcomm sought bids for services within the Contract's two-year term.

favor of Qualcomm Incorporated and against theITSupportCenter, LLC. Each party shall bear its own costs.

IT IS SO ORDERED.

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**