IN THE SUPREME COURT OF THE STATE OF DELAWARE

CITY OF NEWARK, §
§ No. 29, 2023D
Plaintiff Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ C.A. No. N21C-12-039
DONALD M. DURKIN §
CONTRACTING, INC., §
DONALD M. DURKIN, JR., §
JAMES DURKIN, and §
MICHAEL DURKIN, §
§
Defendants Below, §
Appellees. §

Submitted: July 26, 2023
Decided: August 28, 2023

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

Upon appeal from the Superior Court of the State of Delaware: **REVERSED**.

Max B. Walton, Esquire, Shaun Michael Kelly, Esquire, Erica K. Sefton, Esquire, CONNOLLY GALLAGHER LLP, Newark, Delaware, *for Appellant City of Newark.*

Paul A. Logan, Esquire, POST & SCHELL, P.C., Wilmington, Delaware, *for Appellees Donald M. Durkin Contracting, Inc., Donald M. Durkin, Jr., James Durkin, and Michael Durkin.*

**LEGROW**, Justice:

The appellant seeks review of a Superior Court Order[1] resolving the appellees' contractual indemnification obligations. The appellant sought a declaration from the Superior Court that the appellees breached a settlement agreement between the parties and, under the terms of that settlement agreement, the appellees must indemnify the appellant for all its fees and costs associated with a 2019 subpoena and a separate declaratory judgment action the appellees filed in 2019. The Superior Court held that the appellees must indemnify the appellant for the subpoena, but not the 2019 action.

On appeal, the appellant contends the settlement agreement's plain language obligates the appellees to indemnify the appellant for the 2019 action, and the Superior Court erred in concluding otherwise. The indemnification provision at issue broadly required the appellees to indemnify the appellant for any fees and costs it incurred in any proceeding related to the appellees' separate litigation against a third party in Pennsylvania. The appellees filed the 2019 action to clarify the appellant's obligation to cooperate with, and provide discovery in, that Pennsylvania litigation. In its summary judgment decision, the Superior Court denied the appellant's indemnification claim without expressly addressing whether the 2019 action was "related to" the Pennsylvania litigation. Because the appellant is entitled to

---

[1] *City of Newark v. Donald M. Durkin Contracting, Inc.*, 2023 WL 128258 (Del. Super. Jan. 6, 2023) [hereinafter "*Durkin III*"].

indemnification under the plain terms of the parties' agreement, we reverse the Superior Court's decision.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.    The Federal Litigation

On March 16, 2004, Donald Durkin Contracting, Inc., Donald M. Durkin, Jr., James Durkin, and Michael Durkin (collectively, "Durkin") brought an action against the City of Newark (the "City") in the United States District Court for the District of Delaware for wrongful termination of a contract to erect a reservoir and for violation of Durkin's civil rights (the "Federal Litigation").[2] Tighe Cottrell & Logan ("Cottrell") initially represented the City in the Federal Litigation.[3] In 2006, a jury awarded Durkin approximately $25 million in damages.[4] Both parties appealed to the United States Court of Appeals for the Third Circuit and simultaneously pursued mediation.[5]

### B.    The Settlement Agreement

On June 23, 2008, while the Third Circuit appeal was pending, Durkin and the City entered into a fully integrated settlement agreement (the "Settlement

---

[2] App. to Opening Br. at A12.
[3] *Id.*
[4] *Id.*; *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 2991778, at *2-3 (Del. Super. June 4, 2020) [hereinafter "*Durkin I*"].
[5] App. to Opening Br. at A12-13.

Agreement").[6]  In Paragraph 5 of the Settlement Agreement, Durkin released the City from claims for anything transpiring before the settlement:

> For and in consideration of the payment set forth in Section 2 above, Durkin and Federal agree on behalf of themselves and . . . their respective . . . employees, agents, principals, owners, directors, officers, . . . to fully, finally and completely release and discharge . . . the [City], from any and all claims, demands, damages, costs, expenses, liability, actions, causes of actions, or claims of liability or responsibility of any kind whatsoever (including attorneys' fees and costs) which the Durkin and Federal Parties now have or may hereafter have on account of, or arising out of any matter or thing which has happened, developed or occurred prior to the signing of this Agreement, specifically including but not limited to, any and all claims on account of, arising out of or in any way related to the matters that were or could have been asserted in the Lawsuit, that arise from or are related to the facts or matters at issue in the Lawsuit . . . .[7]

Although Durkin generally released the City from all claims arising out of any matters at issue in the Federal Litigation, Durkin expressly retained any claims it might have against Cottrell and clarified that the release did not extend to the City's obligations under the Settlement Agreement:

> **provided, however, that the Durkin and Federal Parties do not release the [City] from their obligations under this Agreement**, and do not release any claims that they have or may have against Paul Cottrell, Tighe & Cottrell P.A. and individuals associated with Tighe & Cottrell P.A. (collectively the "Cottrell Firm").[8]

By the time the parties executed the Settlement Agreement, Durkin had initiated litigation against Cottrell.  Durkin expressly agreed to indemnify the City

---

[6] *Id*.

[7] *Id*. at A26-27.

[8] *Id*. at A27 (emphasis added).

3

for any fees and costs the City incurred in any claim made against the City in the action against Cottrell or in any proceeding related to that action.[9] Specifically, Paragraph 7 to the Settlement Agreement stated:

> If . . . the [City] become[s] a party to the Litigation, or [is a] party to any separate litigation or proceedings related in any way to the Litigation, then Durkin . . . hereby fully release[s] and discharge[s] the [City] from any claims or damages in the Litigation or any separate litigation or proceedings related to the Litigation. . . . **If a claim of any nature and by any party . . . is brought against the [City] in the Litigation, or in separate litigation or proceedings related to the Litigation, [Durkin] agree[s] to:** (1) pay all attorneys' fees, expert fees, and costs incurred by the [City] in defense of the Litigation, or separate litigation or proceedings related to the Litigation; and (2) **indemnify, defend, and hold the [City] harmless from all actions, causes of action, claims, demands, cost, liabilities, expenses and damages (including attorneys' fees) arising out of, or in connection with any claim in the Litigation or any separate litigation or proceedings related to the Litigation.**[10]

The Settlement Agreement and associated mutual releases concluded the Federal Litigation.[11]

### C. The Pennsylvania Litigation

On May 14, 2008, Durkin filed a separate action against Cottrell in the Pennsylvania Court of Common Pleas (the "Pennsylvania Litigation") asserting claims of abuse of process, malicious prosecution, and intentional interference with contractual relations.[12] In that action, Durkin alleged Cottrell advised the City to

---

[9] *Id*. at A28. The Settlement Agreement refers to that action as the "Litigation."
[10] *Id*. at A15, A28-30 (emphasis added).
[11] *Durkin I*, 2020 WL 2991778, at *3.
[12] App. to Opening Br. at A12.

4

pursue frivolous and baseless counterclaims against Durkin and third-party claims against Durkin's surety, Federal Insurance Company, based on allegations Cottrell knew were false.[13] The Pennsylvania Litigation is what the parties referred to as the "Litigation" in the Settlement Agreement.

Beginning in July 2012, Durkin sought discovery from Cottrell in the Pennsylvania Litigation, and Cottrell invoked the attorney-client privilege for discovery relating to Cottrell's representation of the City in the Federal Litigation.[14] In October 2013, Durkin asked the City to waive privilege for communications between Cottrell and the City.[15] The City refused,[16] and on January 9, 2014, and November 23, 2016, Durkin served the City with two subpoenas seeking documents for Durkin's use in the Pennsylvania Litigation.[17] Durkin voluntarily withdrew those subpoenas after the City moved to quash them.[18] On January 15, 2019, Durkin served its third and final subpoena demanding that the City produce in the Pennsylvania Litigation communications between the City and Cottrell (the "2019

---

[13] Answering Br. at 6.
[14] App. to Opening Br. at A15.
[15] *Id.*
[16] *Id.*
[17] App. to Opening Br. at A16.
[18] *Id.*

Subpoena").[19]  Once again, the City moved to quash the 2019 Subpoena, and Durkin withdrew it.[20]

### D. Durkin's 2019 Declaratory Judgment Action

After withdrawing the 2019 Subpoena, Durkin filed a complaint in the Superior Court for declaratory and other relief (the "2019 Declaratory Judgment Action").[21]  Durkin sought, *inter alia*,

> [j]udgment in its favor against the City of Newark declaring that pursuant to the City's obligation to cooperate in the Settlement Agreement, ***the City shall produce, without objection or cost to Durkin, all requested documents and provide designees for deposition and at trial in connection with Durkin's [Pennsylvania Litigation] against [Cottrell]***.[22]

Durkin's theory that the City had a duty to cooperate in the Litigation was based on Paragraph 18 of the Settlement Agreement, titled, "Continuing Cooperation."[23]  Paragraph 18 states, "[t]he Parties agree to cooperate with each other and take such additional actions as necessary to effectuate the purposes of this Agreement."[24]

The City filed a motion to dismiss and a motion for indemnification, sanctions, and other relief.  On June 4, 2020, the Superior Court dismissed Durkin's 2019 Declaratory Judgment Action as untimely because the claim was filed six years after

---

[19] *Id.*
[20] *Id.* at A17.
[21] *Id.* at A49-62.
[22] *Id.* at A61-62.
[23] *Id.* at A61.
[24] *Id.* at A33.

the City's alleged breach of Paragraph 18.[25]  Durkin moved for reargument, but the Superior Court denied that motion, holding that the terms of the Settlement Agreement were unambiguous and observing that nothing in the Settlement Agreement suggested that the City had an obligation to cooperate in the Pennsylvania Litigation.[26]

### E.    The City's Indemnification Requests and Declaratory Judgment Action

A few months later, on November 10, 2020, the Superior Court denied the City's motion for indemnification, sanctions, and other relief, concluding that the City's indemnification claim was not ripe because the City had not yet followed the Settlement Agreement's procedure for seeking indemnification.[27] The City then formally demanded that Durkin indemnify the City for the attorneys' fees and costs it incurred defending Durkin's 2019 Declaratory Judgment Action and 2019 Subpoena.[28] Durkin refused to indemnify the City for either proceeding,[29] and on December 6, 2021, the City filed the current action seeking indemnification and damages.[30]

---

[25] *Id*. at A17; *Durkin I*, 2020 WL 2991778, at *7-10.
[26] App. to Opening Br. at A17-18; Answering Br. at 8; *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 5797622, at *10-11 (Del. Super. Sept. 29, 2020) [hereinafter "*Durkin II*].
[27] *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 6588903, at *7 (Del. Super. Nov. 10, 2020).
[28] App. to Opening Br. at A39-41.
[29] *Id*. at A65-66.
[30] *Id*. at A9-23.

The City's complaint alleged Durkin (i) breached Paragraph 5 of the Settlement Agreement by pursuing the 2019 Subpoena and the 2019 Declaratory Judgment Action, and (ii) breached Paragraph 7 of the Settlement Agreement by refusing to indemnify the City for its fees and expenses incurred in each of those proceedings.[31] The parties promptly cross-moved for summary judgment.[32]

On January 6, 2023, the Superior Court issued its Memorandum Opinion and Order granting in part and denying in part each side's motion for summary judgment. The trial court granted the City's motion for summary judgment with respect to its indemnification claim for the 2019 Subpoena but denied the City's motion with respect to its indemnification claim for the 2019 Declaratory Judgment Action.[33] The Superior Court held that Durkin's 2019 Declaratory Judgment Action did not breach Paragraph 5 of the Settlement Agreement because Durkin filed that action to clarify the scope of the Settlement Agreement's Continuing Cooperation provision.[34] The Superior Court reasoned that Paragraph 5 of the Settlement Agreement did not release, and in fact expressly preserved, the City's obligations under the Settlement Agreement, so Durkin's action to enforce the Settlement Agreement did not contravene the release.[35]

---

[31] *Id*. at A19-22.
[32] *Id*. at A42-48; A67-73. While the cross-motions were pending, the assigned judge retired and a new judge was assigned to the case.
[33] *Durkin III*, 2023 WL 128258, at *7.
[34] *Id*. at *5-6.
[35] *Id*. at *6.

The Superior Court further held that the City was not entitled to indemnification for the 2019 Declaratory Judgment Action.[36] The Superior Court did not, however, analyze the scope of the indemnification provision or its application to the 2019 Declaratory Judgment Action. The trial court separately held that the City was entitled to indemnification for the 2019 Subpoena because it was a "claim" as that term was used in the Settlement Agreement, and the attorneys' fees and costs the City incurred in moving to quash the 2019 Subpoena were incurred in a proceeding related to the Pennsylvania Litigation.[37] On January 27, 2023, the City filed its notice of appeal challenging only the Superior Court's holding that the City was not entitled to indemnification for Durkin's 2019 Declaratory Judgment Action.[38]

## II.    STANDARD OF REVIEW

A trial court's decision resolving a motion for summary judgment is reviewed *de novo*, applying the same standard as the trial court.[39] Similarly, questions of contractual interpretation are subject to *de novo* review.[40]

---

[36] *Id*.

[37] *Id*.

[38] Opening Br. at 2.

[39] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005); *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

[40] *CompoSecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807, 816 (Del. 2018).

## III.  ANALYSIS

The City argued to the Superior Court that the 2019 Declaratory Judgment Action sought a specific declaration that the City was obligated to assist Durkin with its discovery and trial efforts in the Pennsylvania Litigation, the actions therefore were related, and the City was entitled to indemnification under the Settlement Agreement.  The City raises similar arguments on appeal.  *First*, the City contends that the plain language of Paragraph 7 requires indemnification because the actions are related. *Second*, it asserts that the Superior Court's other rulings support the City's position regarding relatedness.  *Third*, it argues the parties' intent is consistent with the City's indemnification claim.[41]

### A.    The Settlement Agreement's plain language requires Durkin to indemnify the City for the 2019 Declaratory Judgment Action.

The City first contends Durkin's 2019 Declaratory Judgment Action was related to the Pennsylvania Litigation because it specifically referred to and sought relief compelling the City to assist with Durkin's discovery efforts in the Pennsylvania Litigation.[42]  According to this argument, the two actions are "related," and Paragraph 7 requires Durkin to indemnify the City.[43]

---

[41] Because neither side contends Paragraph 7 is ambiguous, we have not relied on the City's argument regarding the extrinsic evidence of the parties' intent.

[42] Opening Br. at 14.

[43] *Id.*

10

Delaware follows the objective theory of contracts, meaning "a contract's construction should be that which would be understood by an objective, reasonable third party."[44] Further, the Court will interpret clear and unambiguous terms according to their ordinary meaning[45] and will not "torture contractual terms to create ambiguity."[46]

The terms of the Settlement Agreement are unambiguous. The relevant section of Paragraph 7 of the Settlement Agreement states:

> **If a claim of any nature and by any party**, including but not limited to a claim for indemnification or contribution, **is brought against the [City] in the Litigation, or in separate litigation or proceedings related to the Litigation**, [**Durkin**] **agree[s] to:** (1) pay all attorneys' fees, expert fees, and costs incurred by the [City] in defense of the Litigation, or separate litigation or proceedings related to the Litigation; and (2) **indemnify, defend, and hold the [City] harmless from all actions, causes of action, claims, demands, costs, liabilities, expenses and damages (including attorneys' fees) arising out of, or in connection with any claim in the Litigation or any separate litigation or any separate proceedings related to the Litigation.**[47]

Paragraph 7 makes it clear that Durkin agreed to indemnify the City for any claim brought against it "related to" the Pennsylvania Litigation or "arising out of" or "in connection with" any claim in the Pennsylvania Litigation. That language

---

[44] *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[45] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[46] *Amtower v. Hercules Inc.*, 1999 WL 167740, at *12 (Del. Super. Feb. 26, 1999), *aff'd sub nom. Rowland v. Amtower*, 748 A.2d 407 (Del. 2000).

[47] App. to Opening Br. at A29-30 (emphasis added).

sweeps broadly, and Delaware courts recognize the phrases "relating to" and "arising out of" as "paradigmatically broad terms."[48]

The trial court's decision does not apply this language to the 2019 Declaratory Judgment Action. The Superior Court correctly concluded the 2019 Declaratory Judgment Action did not breach Paragraph 5 of the Settlement Agreement. The City does not appeal this conclusion. But, without analyzing whether the 2019 Declaratory Judgment Action was related to or arose out of the Litigation, the Superior Court concluded, "[t]he City is also not entitled to indemnification for its costs and attorneys' fees under Paragraph 7."[49] The City's indemnification claim, however, was distinct from its breach claim under Paragraph 5, and the conclusion that the 2019 Declaratory Judgment Action did not breach Paragraph 5 does not lead inexorably to the conclusion that the City is not entitled to indemnification under Paragraph 7. Paragraph 7 requires indemnification for proceedings "related to" and "arising out of" the Pennsylvania Litigation. The relief Durkin sought in the 2019 Declaratory Judgment Action was the City's cooperation in the Pennsylvania Litigation, including an order requiring the City to produce documents and provide a witness for deposition and at trial. That relief relates to and arises out of the Pennsylvania Litigation.

---

[48] *Lillis v. AT & T Corp.*, 904 A.2d 325, 331 (Del. Ch. 2006); *see Snow Phipps Grp. v. KCAKE Acquisition, Inc.*, 2021 WL 1714202, at *35 (Del. Ch. Apr. 30, 2021).
[49] *Durkin III*, 2023 WL 128258, at *6.

**B.** **The Superior Court's other rulings recognize the relationship between the Pennsylvania Litigation and the 2019 Declaratory Judgment Action.**

The conclusion that the Pennsylvania Litigation and the 2019 Declaratory Judgment Action are related is consistent with the Superior Court's prior rulings in the 2019 action. In its dismissal of Durkin's 2019 Declaratory Judgment Action, the Superior Court stated: "[a]fter reviewing the Complaint, Response, and Supplemental Briefs, it is apparent that [Durkin] requests this Court to interpret the terms of the Settlement Agreement and declare that [the City] is henceforward obligated to provide [Durkin] with requested documents for use in the Pennsylvania [L]itigation."[50] And in its September 2020 Opinion denying reargument, the Superior Court again observed: "[Durkin] seeks a declaration that the Settlement Agreement obligates [the City] to assist [Durkin] in its case against Cottrell (the Pennsylvania Litigation)."[51]

The Superior Court's analysis in this case regarding the 2019 Subpoena also underscores the relatedness between the 2019 Declaratory Judgment Action and the Pennsylvania Litigation. The Superior Court considered the plain language of Paragraph 7 when it awarded the City indemnification for the 2019 Subpoena.[52] In that portion of its analysis, the Superior Court focused on the plain meaning of the

---

[50] *Durkin I*, 2020 WL 2991778, at *7.
[51] *Durkin II,* 2020 WL 5797622, at *3.
[52] *Durkin III,* 2023 WL 128258, at *6.

word "claim" and held that "the attorneys' fees and costs incurred by the City in moving to quash the 2019 Subpoena were incurred in a proceeding related to the Pennsylvania Litigation, as required by Paragraph 7."[53]  That holding, which neither party appealed, aligns with the City's position that Durkin's 2019 Declaratory Judgment Action also is related to the Pennsylvania Litigation.  After all, the 2019 Declaratory Judgment Action and the 2019 Subpoena sought the same relief from the City: production of documents and witnesses in the Pennsylvania Litigation.

Accordingly, because indemnification was required under both the plain language of the Settlement Agreement and the Superior Court's other holdings regarding the scope of the proceedings between the parties, the Superior Court should have entered judgment in the City's favor for its indemnification claim relating to the 2019 Declaratory Judgment Action.

## IV.  CONCLUSION

For the foregoing reasons, we reverse the portion of the Superior Court's January 6, 2023 Memorandum Opinion and Order awarding summary judgment to Durkin for the City's claim for indemnification for the 2019 Declaratory Judgment Action.  This case is remanded to the Superior Court for further proceedings consistent with this opinion.  Jurisdiction is not retained.

---

[53] *Id.*