# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2741
_____

Nebraska Furniture Mart, Inc.

*Plaintiff - Appellant*

v.

Guardsman US LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 9, 2023
Filed: September 7, 2023
[Unpublished]
_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.
_____

PER CURIAM.

This is a straightforward breach-of-contract action brought by Nebraska Furniture Mart to recover $330,000 from Guardsman US, LLC. The case ended at

summary judgment, however, when the district court[1] concluded that Guardsman had no obligation to pay.  We affirm.

## I.

The two companies had a steady business relationship for over two decades. Guardsman offered protection plans for Nebraska Furniture Mart products. Customers purchased the insurance from the furniture retailer, which then forwarded the premiums to Guardsman.  If there was a problem with an item, like damage or a stain, customers would file a claim.  Simple enough.

More complicated was the contractual provision requiring Guardsman to send some of the money back to Nebraska Furniture Mart.  Called the "Trade Program," it required a single lump-sum payment of 5% of the previous year's protection-plan sales.  In return, Nebraska Furniture Mart had to "re-invest[]" the money "to help increase the overall close ratio performance of the program."  In plain English, it had to spend the money in ways that increased the sales of Guardsman protection plans.

The relationship ended in 2020 when Nebraska Furniture Mart allowed the contract to expire.  Several weeks later, it demanded the annual Trade Program payment, which amounted to just over $330,000.  After Guardsman refused to pay, Nebraska Furniture Mart sued for breach of contract.  The district court granted summary judgment to Guardsman.

## II.

"Summary judgment was appropriate if the evidence, viewed in the light most favorable to" Nebraska Furniture Mart, "shows no genuine issue of material fact exists" and Guardsman was "entitled to judgment as a matter of law."  *Prowse v.*

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

*Washington*, 9 F.4th 836, 838 (8th Cir. 2021) (citation and brackets omitted); *see also Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 21 F.4th 1002, 1005 (8th Cir. 2021) (reviewing de novo).  Delaware law applies because the contract says so in an enforceable choice-of-law clause.  *See DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2005).

## A.

The Trade Program ended with the rest of the contract.  *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 760 (Del. 2022) (relying on a contract's "unambiguous terms" (citation omitted)).  It required Guardsman to return 5% "annually" to Nebraska Furniture Mart, but only while the contract was in effect.

The contract's "survival clause," which allows "term[s]" to survive the "expiration" of the contract "where the context reasonably requires," confirms this reading.  The "context" comes from Nebraska Furniture Mart's commitment to "re-invest[]" all "trade[-]program dollars" in ways that "increase[d] the overall close ratio performance of the program."  *See GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) ("giving effect to all provisions" of the contract (citation omitted)).  It could not "re-invest[]" in a program that no longer existed.  *See Council of the Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 7 (Del. 2002) (explaining that a contract should be "read as a whole").

## B.

Nebraska Furniture Mart's response relies on a different document altogether. In March 2020, a Guardsman executive signed a form entitled "Funding Program" that referred to a 5% "Rebate Amount" and "Anniversary Support" in the amount of $125,000.  It was otherwise mostly blank.

This document is a bit of a mystery.  The district court thought it was "a form used to collect information."  But as Nebraska Furniture Mart argues, it specifically

referenced a "Rebate Amount" of 5% based on "net receipts" that would be "upheld via the Vendor Master Agreement."

Even assuming that "Vendor Master Agreement" is a reference to the parties' contract, the Funding Program document does not help Nebraska Furniture Mart. Based on "context," as we explain above, the "re-invest[ment]" payments ended once the contract did. In these circumstances, we cannot look to "extrinsic evidence" beyond "the four corners of the agreement." *Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759–60 (Del. 2018) (citation omitted). The contract's plain language controls. *See Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." (citation omitted)).

Nebraska Furniture Mart's alternative argument, which is that the Funding Program document is an amendment to the parties' contract, fares no better. The contract says the parties can amend it, but "only in a written agreement signed by both parties." And here, only a *Guardsman* executive signed the Funding Program document, so it cannot be an amendment. *See Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) (requiring "mutual assent" for an amendment).

It is true, as Nebraska Furniture Mart points out, that parties can agree to amend a contract however they wish, even if the process they ultimately choose violates the requirements of the contract they wish to amend. *See Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972). But what is missing here is any evidence that they intended to do so. Indeed, the Funding Program document never uses the word "amendment," much less purports to alter the mechanism for getting it done. *See id.* ("The prohibition against amendment except by written change may be waived or modified in the same way in which any other provision of a written agreement may be waived or modified . . . .").

It makes sense that the Funding Program document did not try to do more. By its own terms, it was subject to the "Vendor Master Agreement," not the other way around. In the end, the survival clause tells us what we need to know: neither the Trade Program nor the "re-invest[ment]" obligation outlives the contract.

III.

We accordingly affirm the judgment of the district court.

_____