# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. N19C-05-108 MMJ CCLD |
| v. | ) ) | |
| SYNGENTA CROP PROTECTION LLC, | ) ) ) ) | |
| Defendant. | ) | |

Submitted: January 27, 2023
Decided: March 28, 2023

## POST-TRIAL OPINION

John D. Balaguer, Esq., Timothy S. Martin, Esq., White and Williams LLP, Wilmington, DE, Michael M. Marick, Esq. (*pro hac vice*), Karen M. Dixon, Esq. (*pro hac vice*), Skarzynski Marick & Black LLP, Chicago, IL, Alexis J. Rogoski, Esq. (*pro hac vice*), Andrew Gerow, Esq. (*pro hac vice*), Skarzynski Marick & Black LLP, New York, NY, *Attorneys for Plaintiffs*

Stephen E. Jenkins, Esq., Catherine A. Gaul, Esq., Ashby & Geddes P.A., Wilmington, DE, Dorothea W. Regal, Esq. (*pro hac vice*), Joshua L. Blosveren, Esq. (*pro hac vice*), John P. Curley, Esq. (*pro hac vice*), Miriam J. Manber, Esq., (*pro hac vice*), Wendy Tsang, Esq. (*pro hac vice*), Hoguet Newman Regal & Kenney, LLP, New York, NY, *Attorneys for Defendant*

**JOHNSTON, J.**

# PROCEDURAL POSTURE

This is an insurance coverage action between Plaintiffs Zurich American Insurance Company, American Guarantee and Liability Insurance Company (collectively, "Plaintiff Insurers"), and Syngenta Crop Protection, LLC. Syngenta's Swiss parent company is Syngenta Crop Protections AG ("SCPAG"). Syngenta Crop Protection, LLC and SCPAG will be referred to collectively as "Syngenta." Zurich Insurance Company, Ltd. ("ZIC") is Plaintiff Insurers' Swiss affiliate. ZIC is the entity that was involved in the insurance underwriting for the policies at issue in this case.

The underlying litigation for which Syngenta sought insurance coverage concerns multiple actions alleging bodily injuries, sickness, or disease resulting from exposure to Paraquat (the "Paraquat Actions").

Plaintiff Insurers requested: (1) declaratory judgment that there is no insurance coverage for the underlying Paraquat-related claims (Count I); (2) declaratory judgment that the alleged misrepresentations, omissions, concealment of facts, and incorrect statements in Syngenta's insurance applications prevent recovery for the Paraquat-related claims (Count II); (3) recoupment of the defense costs advanced by Plaintiff Insurers for the Paraquat-related claims (Count III); and (4) restitution (Count IV).[1]

---

[1] *See generally*, Am. Compl.

Syngenta filed counterclaims seeking: (1) damages for breach of contract (Counterclaim I); (2) declaratory relief regarding the duty to defend (Counterclaim II); (3) declaratory relief regarding the duty to indemnify (Counterclaim III); and (4) damages associated with an alleged breach of the implied obligations of good faith and fair dealing (Counterclaim IV).[2]

After Summary Judgment, Counts II, III, and IV of Plaintiff Insurers' Amended Complaint remain. Count II requests declaratory judgment that the alleged misrepresentations, omissions, concealment of facts, and incorrect statements in Syngenta's insurance applications prevent recovery for the Paraquat-related claims.[3] Counts III and IV seek reimbursement for all defense costs paid to Syngenta under the Zurich Policies for the Paraquat Actions.

This Court held a bench trial on October 3, 4, 5, 6, 7, and 18, 2022. Post-trial briefs were filed. Under 18 *Del. C.* § 2711, Plaintiff Insurers "must show a false representation by the insured, the materiality of that representation to the insured risk, and . . . reliance on the representation made."[4]

---

[2] *See generally*, Am. Counterclaims.
[3] *Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 2022 WL 4091260, at *8–9 (Del. Super.).
[4] *Old Republic Ins. Co. v. Rexene Corp.*, 1990 WL 176791, at *6 (Del. Ch.).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### *The Tillery Letter*

On January 18, 2016, Stephen Tillery ("Tillery") sent a letter to Syngenta (the "Tillery Letter") alleging his firm had "been retained by numerous victims of Parkinson's disease." The Tillery Letter alleged a connection between Paraquat—an herbicide manufactured and sold by Syngenta—and Parkinson's disease. The Tillery Letter mentioned various studies allegedly supporting such a connection. Syngenta was familiar with all studies that were cited.[5] The Tillery Letter suggested pursuing a few "bellwether" cases instead of incurring the expense of pursuing cases in numerous jurisdictions. The Tillery Letter also stated that Tillery believed his clients and Syngenta could execute a tolling agreement while waiting for a few "bellwether cases" to be litigated.

By Opinion dated August 3, 2020, this Court held that the Tillery Letter did not constitute a "Claim for Damages."[6]

> The Court finds that the January 18, 2016 Tillery Letter constituted a threat of future litigation. The Tillery Letter's mere reference to personal injury is insufficient to constitute a claim. Taken as a whole, the Tillery Letter is reasonably interpreted at most as requesting damages, and proposing a future method by which to resolve any future claims. The Tillery Letter's lack of specificity regarding

---

[5] Oct. 3 Tr. [Breutel] 107:14–108:6.

[6] *Zurich American Ins. Co. v. Syngenta Crop Protection, LLC*, 2020 WL 5237318, at *9–11 (Del. Super.); *see also Zurich Am. Ins. Co.*, 2022 WL 4091260, at *2.

4

potential claimants or plaintiffs prevents this Court from finding that the Tillery Letter is a "Claim for Damages."[7]

### *Kirkland Fees*

After receiving the Tillery Letter, Syngenta engaged Kirkland & Ellis LLP ("Kirkland") to investigate the substance of the Tillery Letter and to follow up with Tillery. On February 10, 2016, Kirkland met with Tillery. The purpose of the meeting was: (1) to respond to Tillery's request for a conversation regarding the contents of the proposal from the Tillery Letter; and (2) to get more information from Tillery about his clients or other matters that could be useful for evaluation.

In the meeting, Tillery did not disclose specific information concerning the identity of his clients, nor did he provide the information Kirkland requested to substantiate his claims. After the meeting, Kirkland continued: to conduct an analysis of the scientific literature related to the allegation that Paraquat might be connected to Parkinson's disease; and to provide a litigation risk assessment. Kirkland billed Syngenta approximately $2 million for its work regarding Tillery and the related Paraquat research (the "Kirkland Fees").

After the meeting, Tillery did not provide to Kirkland any of the requested information to substantiate his claims. The last communication between Tillery and Kirkland before the filing of the Hoffmann Action—the first of the Paraquat

---

[7] *Id.* at *9.

Actions—was on April 25, 2016. The April 25, 2016 communication was an email where a litigation partner from Kirkland continued to ask for medical records for the six unidentified "bellwether plaintiffs." This email also asked for copies of documents allegedly confirming Syngenta knew of a potential connection between Paraquat and Parkinson's Disease. Tillery filed the Hoffmann Action more than a year later, in October 2017.

### *Renewal Application for 2017 Coverage*

The case centers around Syngenta's responses to Questions 19, 20, and 21 of the 2016 renewal application for 2017 to 2018 insurance coverage (the "Renewal Application").

Question 19 asked Syngenta to "[a]ttach a summary of ground up aggregate losses, insured and uninsured, including all defense costs for the past 5 years . . . ."

Question 20 asked whether there were "any individual occurrences or claims during the past 10 years . . . which have cost or are reasonably expected to cost (including both indemnity and defense costs) more than $2 million . . . ."

Question 21 asked whether there were "any integrated or batch occurrences or claims, whether or not reported to an insurance carrier as an integrated or batch occurrence, during the past 10 years . . . which have cost or are reasonably expected to cost more than $2 million . . . ."

Beginning with the 2017 to 2018 year (the "2017 Policies"), the policies changed from occurrence-reported policies to claims-made policies.[8] The Renewal Application—a Bermuda Form Application—did not contain definitions for "defense costs," "claim," or "occurrence." Syngenta did not provide information about the Kirkland Fees related to Tillery, or the Tillery Letter, in response to Questions 19, 20, or 21.

### *Bermuda Form Application*

Plaintiff Insurers argue the Bermuda Form Application shares a symbiotic relationship with a Bermuda Form Policy. Plaintiff Insurers argue the 2016–17 Liability Master Policy (the "2016 ZIC Excess Policy") is a Bermuda Form Policy. Thus, Plaintiff Insurers argue the 2016 ZIC Excess Policy definitions should apply when interpreting the Renewal Application.

Syngenta argues Syngenta's responses to Questions 19, 20, and 21 were accurate and consistent with the course of dealing of the parties. Syngenta also argues any ambiguities should be interpreted in its favor.

The Court finds the 2016 ZIC Excess Policy definitions are inapplicable to the Renewal Application. The Bermuda Form Application contains no definitions and makes no reference to any other document containing definitions.

---

[8] An occurrence-reported policy's coverage is triggered when notice of an incident is given to the insurer, whereas a claims-made policy's coverage is triggered when a claim is made against the insured.

Additionally, the 2017 Policies being applied for were not Bermuda Form Policies because they were claims-made policies.[9]  While the previous year's 2016 ZIC Excess Policy was an occurrence-reported policy—like a Bermuda Form Policy— the 2016 ZIC Excess Policy contained various differences when compared to a traditional Bermuda Form Policy.  Principal of these differences was that the 2016 ZIC Excess Policy's applicable law was Swiss law, rather than the standard Bermuda Form Policy's amended version applying New York law or English law.[10]  Therefore, the 2016 ZIC Excess Policy definitions are not incorporated into the Renewal Application.

### *Contract Interpretation*

The definitions of the terms in the Renewal Application are subject to insurance contract interpretation principles.[11]  In *Ferrellgas Partners L.P. v. Zurich American Insurance Company*,[12] this Court outlined the principles of insurance contract interpretation:

> Interpretation of contracts is a question of law.   The Court must give effect to the parties' mutual intent at the time of contracting.   The Court should interpret contract language as it "would be understood by any objective, reasonable third party."   Absent ambiguity, contract terms should be

---

[9] Oct. 10 Tr. [Scorey] 85:2–23 (stating that a claims-made policy is not a Bermuda Form Policy).
[10] Oct. 10 Tr. [Scorey] 76:15–78:6.
[11] *See Novellino v. Life Ins. Co. of N. Am.*, 216 A.2d 420, 422 (Del. 1966) (noting that an offer is contained in an application for insurance); *Mut. of Omaha Ins. Co. v. Driskell*, 293 So. 3d 261, 264 (Miss. 2020) ("[A]n application for insurance is not a contract but rather an offer to contract.").
[12] 2020 WL 363677 (Del. Super.), *appeal denied*, 2020 WL 764155 (Del. Super.).

8

accorded their plain, ordinary meaning. Ambiguity exists when the disputed term "is fairly or reasonably susceptible to more than one meaning."

Insurance policies are also adhesion contracts, not generally the result of arms-length negotiation. Thus, the rules of construction "differ from those applied to most other contracts." Where policy language is ambiguous, the doctrine of *contra proferentem* requires the Court to interpret the policy in favor of the insured because the insurer drafted the policy. The Court, pursuant to this doctrine, looks to "the reasonable expectations of the insured at the time when he entered the contract[.]" The Court will only apply this doctrine where the policy is ambiguous. When the policy language is "clear and unambiguous[,] a Delaware court will not destroy or twist the words under the guise of construing them" and each party "will be bound by its plain meaning."[13]

If contract language is ambiguous, then the Court may consider extrinsic evidence.[14] The most persuasive form of extrinsic evidence is the course of dealing between the parties.[15]

The Court finds the doctrine of *contra preferentem* is inapplicable in the instant case because the Plaintiff Insurers did not draft the Renewal Application.

---

[13] *Id.* at *4 (internal citations omitted).

[14] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("[W]here reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence.").

[15] *In re Mobilactive Media, LLC*, 2013 WL 297950, at *16 (Del. Ch.) ("[C]ourts should consider the parties' course of performance as the 'most persuasive evidence of the [meaning of the] parties' agreement.'" (quoting *Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *5 (Del. Ch.), *aff'd*, 970 A.2d 256 (Del. 2009))); *see also* Restatement of Contracts (Second) § 202 cmt. g (2008).

9

Rather, the parties used a Bermuda Form Application, which is a broker-driven application form. Thus, neither party is entitled to benefit, as a matter of law, from any ambiguity in the Renewal Application. Where terms are ambiguous, the Court will analyze any applicable extrinsic evidence.

### *Question 19*

Question 19 on the Renewal Application states: "Attach a summary of ground up aggregate losses, insured and uninsured, including all defense costs for the past 5 years . . . ."

Without a definition of "defense costs" in the application, the Court finds the term "defense costs" is ambiguous. The core dispute is whether research costs are defense costs. Without a definition to consult, the Court finds the definition of "defense costs" is ambiguous in the context of Question 19 of the Renewal Application.

The Court finds the course of dealing between ZIC and Syngenta is the most pertinent evidence controlling whether Syngenta was required to submit the Kirkland Fees in response to Question 19.[16] Since at least 2009, Syngenta has responded to Question 19 in annual renewal applications by submitting a loss run,

---

[16] *In re Mobilactive Media, LLC*, 2013 WL 297950, at *16 (Del. Ch.) ("[C]ourts should consider the parties' course of performance as the 'most persuasive evidence of the [meaning of the] parties' agreement.'" (quoting *Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *5 (Del. Ch.), *aff'd*, 970 A.2d 256 (Del. 2009))); *see also* Restatement of Contracts (Second) § 202 cmt. g (2008).

and stating: "Please refer to claims information."[17] The attached loss run only included data on claims and occurrences of which Syngenta's insurers had been formally notified.[18] Each cost on the loss run was associated with a specific notified claim or occurrence. Any costs incurred that were not associated with a notified matter were not on the loss run.[19] ZIC's underwriter was aware of and understood that Syngenta's loss run only contained notified claims and occurrences.[20] Therefore, Syngenta's response to Question 19 made it clear that Syngenta was only submitting notified matters.

The Court finds the course of dealing since 2009 between the parties demonstrates that it was acceptable for Syngenta to submit a loss run in response to Question 19. Because the parties' course of dealing established a pattern whereby it was acceptable for Syngenta to submit a loss run only detailing costs associated with a notified claim or occurrence, it was not a false representation for Syngenta to do the same in the Renewal Application. Therefore, the fact that Syngenta did not disclose the Kirkland Fees in its Renewal Application was neither an omission nor misrepresentation for purposes of 18 *Del. C.* § 2711.

---

[17] Oct. 3 Tr. [Breutel] 129:10–19, 135:3–136:12; Oct. 6 Tr. [Terp] 20:9–18.
[18] *See* Oct. 6 Tr. [Terp] 14:20–15:20 (explaining the contents of the columns in the loss run); TX032; TX162; TX188.
[19] *See* Oct. 6 Tr. [Terp] 18:17–19:7 ("The system will only capture information once there is a notified insurance claim."); Oct. 4 Tr. [Oram] 198:8–199:8 (confirming the loss run only included matters that had been notified to Syngenta insurers).
[20] Oct. 4 Tr. [Oram] 198:2–199:8.

11

Plaintiff Insurers have admitted that "submitting loss runs is a standard and potentially acceptable means of responding" to Question 19.[21] The parties submitted evidence regarding insurance industry customs and practices on this issue. Having ruled on the basis of the parties' course of dealing, the Court need not address industry customs and practices.

### Questions 20 and 21

Question 20 asked whether there were "any individual occurrences or claims during the past 10 years . . . which have cost or are reasonably expected to cost (including both indemnity and defense costs) more than $2 million . . . ." Question 21 asked whether there were "any integrated or batch occurrences or claims, whether or not reported to an insurance carrier as an integrated or batch occurrence, during the past 10 years . . . which have cost or are reasonably expected to cost more than $2 million . . . ."

The question is whether the Tillery Letter constitutes an occurrence, integrated occurrence, or claim for purposes of Questions 20 and 21. The Court previously has held that the Tillery Letter did not constitute a "Claim for Damages."[22] Therefore, the only remaining issue is whether the Tillery Letter constitutes an "occurrence" or "integrated occurrence" that Syngenta was required

---

[21] Plaintiff Insurers' Reply Br. at 5–6.
[22] *Zurich American Ins. Co. v. Syngenta Crop Protection, LLC*, 2020 WL 5237318, at *9–11 (Del. Super.); *see also Zurich Am. Ins. Co.*, 2022 WL 4091260, at *2.

12

to provide in response to Questions 20 and 21. An "integrated occurrence" is a subset of "occurrence." In other words, to have an "integrated occurrence," one must first have an "occurrence." Therefore, the Court will focus on the definition of "occurrence," and only address "integrated occurrence" if necessary.

Two expert witnesses opined as to two different definitions of "occurrence" that could be applicable. One expert claimed "occurrence" meant "an allegation of fact that somebody in the real world has been injured . . . ."[23] The other expert narrowed the definition, claiming an "occurrence" meant there had to be an individual claimant who was identifiable.[24]

The course of dealing between Syngenta and ZIC demonstrates that Questions 20 and 21 were satisfied by Syngenta's identification of the subsets of the notified claims and occurrences on the loss run. Syngenta did not include the Tillery Letter in the response to Questions 20 and 21 because it was not in the loss run as a notified claim or occurrence. The Tillery Letter and subsequent meetings with Tillery did not yield specifics regarding alleged claimants until more than one year after uploading its Renewal Application—when the Hoffmann Action was filed.

---

[23] Oct. 10 Tr. [Scorey] 50:4–23.
[24] Oct. 7 Tr. [Baker] 44:19–45:1.

13

The Tillery Letter and subsequent information from Tillery provided only generalized and speculative information about the dollar value of potential future litigation. Any cost estimates were of necessity amorphous and uncertain.

Nevertheless, Tillery previously had litigated against Syngenta in the Atrazine Community Water Actions and the Atrazine Doe Action.[25] The Atrazine Community Water Actions led to a $105 million settlement and $80 million in defense costs.[26] In 2016, the Atrazine Doe Action was still pending.[27] By May 2015, the Atrazine Doe Action had incurred over $9 million in defense costs.[28]

If "occurrence" is defined as a circumstance reasonably expected to give rise to a claim, costs may include funds paid to investigate and assess the risks of anticipated litigation. Based on Syngenta's prior knowledge of and experience with litigation initiated by Tillery, it would have been reasonable to anticipate that indemnity and defense costs could exceed $2 million for future Paraquat actions. Additionally, Syngenta could not reasonably pass off any possibility of future litigation involving Tillery as a purely frivolous threat.

In 2019, the conduct of Plaintiff Insurers and ZIC demonstrates how they interpreted the definition of "occurrence." Syngenta attempted to give notice of

---

[25] Oct. 18 Tr. [Nadel] 17:9–18:19.
[26] *Id.* at 17:9–18:6, 56:16–57:16.
[27] *Id.* at 18:20–22.
[28] TX016-0004 ("The Captive has reimbursed the insured for its defense costs incurred till May 2015 in the amount of USD 9,241,148 less USD 1,000,000 deductible.").

circumstance regarding Glyphosate losses against Monsanto in 2018. Syngenta also sold products containing Glyphosate. Plaintiff Insurers rejected the notice in 2019 because Syngenta did not identify the names and addresses of any injured persons. Plaintiff Insurers claim they were less concerned about the Glyphosate losses because they were tied to Monsanto, not Syngenta. In response to Syngenta's notice, ZIC's underwriter asked Syngenta "to explain in detail which concrete facts make it appear likely that a specific, determinable claim by an individualized claimant will be brought against Syngenta and when and how the risk management department of the policyholder first became aware of these facts."[29] A letter from Plaintiff Insurers to Syngenta, dated February 7, 2019, again states that for an occurrence to have taken place, Syngenta must "provide, at a minimum, . . . (1) How, when and where the "occurrence" or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the 'occurrence' or offense."[30]

While these events took place in a policy year after the Renewal Application, the Court finds Plaintiff Insurers' interpretation of "occurrence" persuasive as to how Plaintiff Insurers likely interpreted the meaning of

[29] TX094-0001.
[30] TX128-0004.

15

"occurrence" on the Renewal Application. Syngenta's expert provided a definition of "occurrence" that also aligns with Plaintiff Insurers' description of the meaning of "occurrence" in their correspondence with Syngenta. Therefore, for a matter to constitute an "occurrence," or "integrated occurrence," an identifiable claimant must exist. The Tillery Letter alleged that claimants existed, but Tillery declined upon request to share any identifiable information about his alleged clients with Syngenta before Syngenta submitted the Renewal Application. Thus, no identifiable claimant existed at the time of the Renewal Application.

The Court finds the definition of "occurrence" is ambiguous in the context of Questions 20 and 21 of the Renewal Application. The Court finds the course of dealing between the parties controls whether Syngenta was required to disclose the Tillery Letter in response to Questions 20 and 21.[31] The course of dealing between the parties demonstrated that for a matter to warrant disclosure as an "occurrence," or "integrated occurrence" in response to Questions 20 and 21, an identifiable claimant must exist. The Tillery Letter did not contain identifiable claimants, nor was Syngenta able to obtain identification in its follow up with Tillery.[32] Thus, for

---

[31] *In re Mobilactive Media, LLC*, 2013 WL 297950, at *16 (Del. Ch.) ("[C]ourts should consider the parties' course of performance as the 'most persuasive evidence of the [meaning of the] parties' agreement.'" (quoting *Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *5 (Del. Ch.), *aff'd*, 970 A.2d 256 (Del. 2009))); *see also* Restatement of Contracts (Second) § 202 cmt. g (2008).

[32] The Court considered testimony that Syngenta would have been incentivized to disclose the Tillery Letter under its 2016 insurance policies because the 2016 insurance policies were

16

the Renewal Application, an "occurrence" required more than non-specific circumstances reasonably expected to give rise to a claim.

Therefore, the Tillery Letter did not constitute an "occurrence" or "integrated occurrence" for purposes of Questions 20 and 21. The Court finds that Syngenta's failure to disclose the Tillery Letter in its response to Questions 20 and 21 of the Renewal Application was neither an omission nor misrepresentation for purposes of 18 *Del. C.* § 2711.

### *Materiality*

### *Applicable Standard*

To prevent recovery under 18 *Del. C.* § 2711, an omission or misrepresentation must be:

> (1) Fraudulent; or
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

---

occurrence-reported policies. Reporting the Tillery Letter at that time would have preserved coverage under the 2016 insurance policies. While relevant, this testimony is not dispositive.

Plaintiff Insurers contend that subpart 2 contains an objective standard. This would mean an omission is material if it "would be likely to induce a reasonable person to manifest assent, or if the maker knows that it would be likely to induce the recipient to do so."[33] Syngenta contends that if subpart 2 is an objective standard, then an omission is material if it "would be likely to induce a [reasonable insurer in this insurer's position] to manifest assent, or if the maker knows that it would be likely to induce the recipient to do so."[34] While *Smith v. Keyston*,[35] *Windsor-Mount Joy Mutual Insurance Company v. Jones*,[36] and *United Westlabs, Inc. v. Greenwich Insurance Company*[37] all reference the "reasonable person" objective standard of materiality articulated in the Restatement (Second) of Contracts, the Court has yet to make a definitive ruling on the objective standard's applicability to 18 *Del. C.* § 2711(2).

The parties agree that subpart 3 is a subjective standard, meaning an omission is material if Plaintiff Insurers would "not have issued the policy . . . or would not have issued it at the same premium rate or would not have issued a

---

[33] *Smith v. Keystone*, 2005 WL 791387, at *3 (Del. Super.); *Windsor-Mount Joy Mut. Ins. Co. v. Jones*, 2009 WL 3069695, at *3 (Del. Super.); *United Westlabs, Inc. v. Greenwich Ins. Co*., 2011 WL 2623932, at *12 (Del. Super.), *aff'd*, 38 A.3d 1255 (Del. 2012); *see also* Restatement (Second) of Contracts § 164(2).

[34] Restatement (Second) of Contracts § 164(2); Restatement of the Law of Liability Insurance § 8 (2019) ("[T]he materiality analysis focuses on a 'reasonable insurer in this insurer's position . . . .'").

[35] 2005 WL 791387 (Del. Super.).

[36] 2009 WL 3069695 (Del. Super.).

[37] 2011 WL 2623932 (Del. Super.).

policy . . . in as large an amount or would not have provided coverage" if Plaintiff Insurers had known of the omission or misrepresentation.[38]

The Court finds the applicable materiality standard under 18 *Del. C*. § 2711(2) is whether a reasonable insurer in Plaintiff Insurers' position would have found the failure to disclose the Kirkland Fees and Tillery Letter material.[39]

*Plaintiff Insurers Failed to Demonstrate*
*the Kirkland Fees and Tillery Letter*
*Were Material Under 18* Del. C. *§ 2711(3)*

Plaintiff Insurers and ZIC claim that if they had known about the Kirkland Fees and Tillery Letter, they either would not have continued to insure Syngenta, or would have issued a policy with a Paraquat exclusion. This assertion is based primarily on the retrospective testimony of ZIC's underwriter.[40] In this context of determining materiality, the Court does not generally give the retrospective testimony of an underwriter much weight, without other corroborating evidence.[41]

---

[38] 18 *Del. C.* § 2711(3).
[39] Restatement of the Law of Liability Insurance § 8 (2019).
[40] *See* Plaintiff Insurers' Opening Br. at 46–55.
[41] *Oglesby v. Penn Mut. Life Ins. Co*., 877 F. Supp. 872, 889 (D. Del. 1994) (noting in the context of a disability policy dispute that an underwriter's statement claiming he would have excluded a risk from the policy can generally "be rightly dismissed as merely post hoc"); Restatement of the Law of Liability Insurance § 9 (2019) ("Standing alone, post-loss testimony by the underwriter about what the underwriter would have done differently has not carried much weight with courts."); 45 C.J.S. Insurance § 877 ("[T]he trier of facts is not required to believe 'postmortem' testimony of the company's agents that the insurance policy would have been refused if the true facts had been made known.").

19

Plaintiff Insurers increased the amount of risk in Syngenta's self-insured retention layer from 2016 to 2019. The retained risk that Plaintiff Insurers accepted went from 0% in 2016 to 15% in 2019. Plaintiff Insurers maintained the 15% level of retained risk in Syngenta's self-insured retention layer until 2022.

Plaintiff Insurers also demonstrated they were willing to continue to insure against Paraquat-related suits after learning of pending litigation. Plaintiff Insurers did not exclude Paraquat from Syngenta's policies immediately after the filing of the Hoffmann Action in October 2017. Rather, Plaintiff Insurers waited until 2022 to exclude Paraquat from coverage. Plaintiff Insurers contend they did not materially increase their Paraquat-related risk exposure by continuing to insure against Paraquat claims because of a claims-series provision that "makes sure . . . any future claims would be attached to the first one."[42] However, by failing to exclude Paraquat completely, Plaintiff Insurers were still susceptible to other types of Paraquat-related claims—such as bodily injury claims resulting from ingesting Paraquat. This evidences Plaintiff Insurers' willingness to accept risk related to Paraquat, even after litigation had been initiated. Plaintiff Insurers could have completely excluded Paraquat from coverage under the policies after learning of the Hoffmann Action in October 2017, but they chose not to do so.

---

[42] Oct. 4 Tr. [Oram] 119:13–19.

The Court finds that Plaintiff Insurers failed to demonstrate by a preponderance of the evidence that they would have made a material change to the renewed policy under 18 *Del. C.* § 2711(3) if they would have known about the Kirkland Fees and Tillery Letter.[43] Therefore, failure to disclose the Kirkland Fees and Tillery Letter in the Renewal Application was not material under 18 *Del. C.* § 2711(3).

*Plaintiff Insurers Failed to Demonstrate*
*the Kirkland Fees and Tillery Letter*
*Were Material Under 18* Del. C. *§ 2711(2)*

Little in the record denotes what an insurance carrier other than Plaintiff Insurers and ZIC would have done with the disclosure of the Kirkland Fees and the Tillery Letter under similar circumstances. However, at the time of the Renewal Application in 2016, the insurance market was a "soft market."[44] This meant insurance carriers held more negotiating power than normal due to market conditions.[45] The ZIC underwriter also considered Syngenta a large account.[46] It is not disputed that Syngenta would not have continued to purchase coverage at the same premium level if a Paraquat exclusion were added to the policy.[47] In its 2015

---

[43] The Court notes that the parties did not contend that the disclosure of the Kirkland Fees and the Tillery Letter would have led to an increased premium. Rather, the parties focused on the potential that disclosure of the Kirkland Fees and Tillery Letter would lead to either a Paraquat exclusion, or lead to not issuing the insurance policies at all.
[44] Oct. 5 AM Tr. [Oram] 83:2–4.
[45] *Id.* at 82:10–16.
[46] Oct. 4 Tr. [Oram] 128:16–18.
[47] Oct. 5 AM Tr. [Oram] 89:22–92:4; TX024-0001.

21

underwriting decision narrative, ZIC admitted it was the "only insurer who intended to exclude [Paraquat]."[48]

The Court finds Plaintiff Insurers failed to demonstrate by a preponderance of the evidence that a reasonable insurer, in Plaintiff Insurers' position, would have found the failure to disclose the Kirkland Fees and Tillery Letter material under 18 *Del. C*. § 2711(2). The combination of market conditions and the lack of evidence concerning other insurers' interest in Paraquat requires the Court to reach this conclusion under the objective standard.

### *Reliance*

To recover under 18 *Del. C*. §2711, Plaintiff Insurers must demonstrate by a preponderance of the evidence that they relied upon the alleged material misrepresentation or omission.[49] Syngenta contends that no employee or agent of Plaintiff Insurers reviewed or relied upon the Renewal application because ZIC, not Plaintiff Insurers, underwrote the policies at issue. Plaintiff Insurers contend ZIC was acting as their agent. Plaintiff Insurers argue they relied on the Renewal Application through their agent.

---

[48] TX075-0008.

[49] *Old Republic Ins. Co. v. Rexene Corp*., 1990 WL 176791, at *6 (Del. Ch.) ("[T]the insurer seeking to void the policy must show a false representation by the insured, the materiality of that representation to the insured risk, and the insurer's reliance on the representation made."); *see also Dickson-Witmer v. Union Bankers Ins. Co.*, 1994 WL 164554, at *5 n.4 (Del. Super.) ("The plaintiff urges the Court to read 18 *Del.C*. § 2711 to require a showing of all three factors (fraud, materiality and reliance) to warrant rescission of an insurance contract.").

The Court has determined that no omission or misrepresentation occurred in Syngenta's response to Questions 19, 20, or 21. The Court also has determined that if Syngenta's response to Questions 19, 20, or 21 were considered a misrepresentation or omission, it was not material. Therefore, the Court finds that the issue of reliance is moot.

## **CONCLUSION**

The Court finds the 2016 ZIC Excess Policy definitions are inapplicable to the Renewal Application.

The Court finds the doctrine of *contra preferentem* is inapplicable in the instant case because Plaintiff Insurers did not draft the Renewal Application.

The Court finds that the course of dealing since 2009 between the parties demonstrates that it was acceptable for Syngenta to submit a loss run in response to Question 19. Thus, the fact that Syngenta did not disclose the Kirkland Fees in its Renewal Application was neither an omission nor misrepresentation pursuant to 18 *Del. C.* § 2711.

The Court finds the Tillery Letter did not constitute an "occurrence" or "integrated occurrence" for purposes of Questions 20 and 21. Thus, Syngenta's failure to disclose the Tillery Letter in its response to Questions 20 and 21 of the Renewal Application was neither an omission nor misrepresentation for purposes of 18 *Del. C.* § 2711.

23

The Court finds the applicable materiality standard under 18 *Del. C.* § 2711(2) is whether a reasonable insurer in Plaintiff Insurers' position would have found the failure to disclose the Kirkland Fees and Tillery Letter material.[50]

The Court finds that failure to disclose the Kirkland Fees and Tillery Letter in the Renewal Application was not material under 18 *Del. C.* § 2711(2)–(3).

The Court finds that the issue of reliance is moot.

Therefore, on Count II, the Court hereby **DENIES** Plaintiff Insurers' request for declaratory judgment that the alleged misrepresentations or omissions prevent recovery for the Paraquat-related claims.  On Counts III and IV, the Court hereby **DENIES** Plaintiff Insurers' request for recoupment and restitution.

**IT IS SO ORDERED.**

/s/ *Mary M. Johnston*
Judge Mary M. Johnston

---

[50] Restatement of the Law of Liability Insurance § 8 (2019).