# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| TAMARA NOL,[1] solely in her capacity as Administrator of the ESTATE OF ERIC NOL, an individual, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N21C-01-177 SPL |
| VETZ INC.,[2] a Delaware Corporation, | ) ) | |
| Defendant. | ) | |

Submitted: August 25, 2023
Decided: November 14, 2023

## DECISION AFTER TRIAL

Jonathan M. Steadman, Esquire, ARMSTRONG TEASDALE, LLP, Wilmington, Delaware, *Attorney for Plaintiff.*

John V. Work, Esquire, LAW OFFICE OF JOHN V. WORK, Wilmington, Delaware, *Attorney for Defendants.*

**LUGG, J.**

---

[1] Eric Nol died during the pendency of this action (D.I. 7) and, on February 8, 2022, this Court permitted Tamara Nol, Administrator of the Estate of Eric Nol, to be substituted as the plaintiff in this action. (D.I. 9).

[2] The original complaint, filed on behalf of Eric Nol as an individual, named Vetz, Inc. ("Vetz"), Steve Stewart, Robert Menendez, and Does 1 through 20 as defendants. (D.I. 1). During the May 9, 2023, pretrial conference, plaintiff's counsel informed the Court that relief was no longer sought from Does 1 through 20, and they were removed from the caption of the case. (D.I. 18). Based upon the stipulated facts, evidence, and post-trial argument, only Vetz remains as a defendant.

## BACKGROUND

In January of 2017, Eric Nol invested $25,000 in MusicMarket, LLC ("MusicMarket").[3] In return, Steve Stewart, the Chief Executive Officer of MusicMarket issued Nol a "Convertible Promissory Note" ("Note") dated January 12, 2017.[4] Under the terms of the Note, MusicMarket promised to "repay [Nol's] investment or to convert the investment into equity in the company under certain identified circumstances."[5] Shortly after this transaction, MusicMarket converted to Vetz, Inc. ("Vetz").[6] The parties do not dispute that Vetz maintains the obligations under the Note issued by MusicMarket.

The Note provides:

> FOR VALUE RECEIVED, MusicMarket LLC, a Delaware limited liability company (the "**Company**") promises to pay to Eric Nol (the "**Investor**"), or its registered assigns, in lawful money of the United States of America the principal sum of Twenty-Five Thousand Dollars ($25,000), or such lesser amount as shall equal the outstanding principal amount thereof, together with interest from the date of this Convertible Promissory Note (the "**Note**") on the unpaid principal balance at a rate equal to 9% per annum, computed on the basis of the actual number of days elapsed and a year of 365 days. To the extent not previously converted in accordance with **Section 6** hereof, all unpaid principal, together with any then unpaid and accrued interest

---

[3] JX 1 at ¶ 1. At the June 5, 2023, bench trial, the parties presented the Court with Stipulated Facts (Joint Exhibit ("JX") 1), the Convertible Promissory Note (JX 2), and Entity Details (JX 3). D.I. 21 (Civil Trial Activity Sheet) at 3.

[4] *Id.*

[5] *Id.*

[6] *Id.* at ¶ 2.

and other amounts payable hereunder, shall be due and payable on the earlier of (i) the eighteen (18) month anniversary of the issuance date set forth above (the "**Maturity Date**"), or (ii) when, upon or after the occurrence of an Event of Default (as defined below), such amounts are declared due and payable by the Investor or made automatically due and payable in accordance with the terms hereof.[7]

"Under the terms of the Note, the outstanding principal balance bore interest at the rate of 9% per annum, with the outstanding principal and all accrued interest due and payable . . . by July 18, 2018 (hereinafter referred to as the "Maturity Date)."[8] Vetz has neither paid the principal balance and interest under the note nor converted any portion of the investment into equity of Vetz.[9]

On January 25, 2021, Nol filed a complaint alleging, among other things, a breach of the note by Vetz; this is the sole claim presently before this Court. The parties agreed to a bench trial and, on June 5, 2023, presented stipulated facts and exhibits to the Court.[10]

---

[7] JX 2 at 1.

[8] JX 1 at ¶ 3.

[9] *Id.* at ¶ 4.

[10] D.I. 21.

## ANALYSIS

"Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages."[11] The parties do not contest the existence of a contractual obligation, a breach of that obligation, and damages.[12] Rather, the parties dispute whether the Note required Nol to fulfill certain prerequisites before pursuing this action at law. The Court finds that it does not.

Nol contends that Vetz's failure to pay the principal balance and interest on or after the Maturity Date, July 12, 2018, constitutes a breach of the contract and demands an award of damages "totaling $39,383.60 as of June 5, 2023."[13] Vetz, on the other hand, posits "the appropriate question is not whether there was a breach of contract, but rather, whether [Nol] has met the requirements under the contract to bring suit."[14] Vetz, citing paragraph 5 of the Note, argues that Nol failed to obtain the "written consent of a Majority in Interest of the Investors" and, thus, failed to satisfy a contractually necessary prerequisite to bringing this lawsuit.[15] Nol responds

---

[11] *Interim Healthcare, Inc. v. Spherion Corp.,* 884 A.2d 513, 548 (Del. Super. 2005). The parties agree with this formulation of the elements of a breach of contract claim. Pl. Op. Brf. at 3; Def. Ans. Brf. at 2-3.

[12] Op. Brf. at 1; Ans. Brf. at 2.

[13] Op. Brf. at 4.

[14] Ans. Brf. at 3.

[15] *Id.*

4

that the provision cited by Vetz applies only to defaults "occurring prior to the Maturity Date of the Note" and does not apply here where Vetz failed to fulfill its obligation on or after the Note's maturity.[16]  And, Nol asserts, even if the language cited by Vetz does apply, "the provision still cannot be enforced in the manner argued by the Defendants" because it presents contradictory provisions creating ambiguities in the agreement.[17]  Finally, Nol posits that Vetz's theory would render the Note illusory "because it would require the borrower to give its consent to the lender before the lender could ever enforce its right to collect on the Note."[18]

The Note rendered "all unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder" due on July 18, 2018 (the Maturity Date) *or* "upon or after the occurrence of an Event of Default."[19]  The disjunctive "or" created two situations under which Vetz would be obligated to repay Nol: (1) on or after July 18, 2018; *or* (2) upon occurrence of an Event of Default. Nol contends that Vetz failed to meet its contractual obligation when it failed to pay the value of the note on or after July 18, 2018.  The Court agrees.

The Court finds that Nol was not required to secure the consent of a Majority

---

[16] Pl. Rply. Br. at 1-2.

[17] *Id.* at 2-3.

[18] *Id.* at 3-4.

[19] JX 2 at 1.

in Interest of the Investors to bring this action.  To the extent that obligation exists under the Note, the Court finds it to apply to the second condition under which the note is due and payable – an "Event of Default."  While an "Event of Default" includes the failure to pay "when due any principal or interest payment on the due date hereunder,"[20] this does not preclude Nol from asserting the first disjunctive obligation presented in the body of the note – payment due on the maturity date.  The provisions of paragraph 5 of the note only apply to the second disjunctive obligation.

The Court finds this outcome consistent with the Note when read as a whole and declines Vetz's invitation to constrain its assessment to only one of the disjunctive alternatives.[21]  "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreements overall scheme or plan."[22]  The principles guiding the construction and interpretation of contracts are well-established.[23]  The agreement must be read as a whole and the plain meaning of clear and unambiguous language must be applied.[24]

---

[20] JX 2 at 3.

[21] *See GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (Court will "give priority to the parties intentions as reflected in the four corners of the agreement" and "construe the agreement as a whole").

[22] *Id.*

[23] *Holifield v. XRI Investment Holdings LLC*, 2023 WL 5761367, at *20-21 (Del. Sept. 7, 2023).

[24] *Id.* at *21.

The Court finds the Note's overall plan afforded Vetz the opportunity to use Nol's investment for 18 months; in return, Vetz was expected to pay that balance with interest or convert Nol's investment into equity in the company. Prior to the Note's maturity, Nol could assert a default and seek remedies subject to the provisions of paragraph 5 of the Note. But where, as here, Vetz simply declined to pay on, or well after, the maturity date, the provisions of paragraph 5 do not apply. Taken as a whole, this makes sense. The Note provided Vetz confidence in the integrity of Nol's investment before it reached maturity; thereafter, the Note assured Vetz's repayment of Nol's investment.

## CONCLUSION

Nol was not required to meet the prerequisites of paragraph 5 before pursuing this action at law to enforce the terms of the note. The Court's conclusion rests on the unambiguous language of the Note, thus it need not address Nol's arguments that the Note was ambiguous or illusory. The Court hereby finds in favor of Nol and against Vetz. Accordingly, judgment is entered in favor of Nol in the agreed upon amount of $39,383.60 as of June 6, 2023.[25]

**IT IS SO ORDERED.**

Sean P. Lugg, Judge

---

[25] JX 1 at 2.