23-1292 (L)
*Vogel v. Boris*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of October, two thousand twenty-four.

PRESENT:
>    GERARD E. LYNCH,
>    BETH ROBINSON,
>    SARAH A. L. MERRIAM,
>           *Circuit Judges*.

───────────────────────────────────────

STEPHEN A. VOGEL,

>    *Plaintiff-Counter-Defendant-Appellant*,

>    v.                                          Nos. 23-1292, 24-1498*

DAVID BORIS, MARSHALL KIEV,

>    *Defendants-Counter-Claimants-Appellees*.

───────────────────────────────────────

─────────────────

* These appeals were consolidated under docket number 23-1292.

FOR APPELLANT:                ERIC SILVESTRI (Joseph P. Lomardo, *on the brief*), Chapman and Cutler LLP, Chicago, IL.

FOR APPELLEES:             JONATHAN L. HOCHMAN (Karen M. Steel, *on the brief*), Schindler Cohen & Hochman LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 25, 2023, and amended judgment entered on September 20, 2023, are **AFFIRMED**.

Plaintiff Stephen Vogel appeals the district court's grant of summary judgment in favor of Defendants David Boris and Marshall Kiev. Vogel sued Boris and Kiev for breach of contract after they allegedly cut Vogel out of a business deal involving a special purpose acquisition company ("SPAC"). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision. As discussed below, we affirm the judgment of the district court because (1) § 7.02(b) of the parties' agreement is ambiguous with respect to the duration of its restrictions, (2) extrinsic evidence confirms it expired with the business combination of the SPAC, and (3) no breach occurred before expiration.

SPACs are publicly traded companies whose sole purpose is to take a privately held corporation public. Often called "blank check companies," SPACs are an alternative to a traditional initial public offering ("IPO"). An entity called a sponsor first forms the SPAC and works with an underwriter to take it public in an IPO. With the proceeds from the IPO, the SPAC (with the help of its sponsor and managers) searches for an attractive privately-held company to acquire. Once a target is identified, the SPAC and the target merge; that business combination turns the privately held corporation into a publicly listed corporation.

In 2016, Vogel, Boris, and Kiev agreed to work together on a SPAC. They formed a management company called Forum Capital Management, LLC, at the top of a corporate structure to launch a SPAC. The management company controlled the SPAC's sponsor, Forum Investors I, LLC, which, in turn, controlled the SPAC, Forum Merger Corporation I ("FMC I"). On February 22, 2018, FMC I merged with ConvergeOne, rendering the business combination a publicly listed, active corporation.

Vogel alleges that Boris and Kiev breached the Amended and Restated Limited Liability Company Operating Agreement of Forum Capital Management,

3

LLC ("Operating Agreement"), which is governed by Delaware law. Vogel alleges that Defendants breached the portion of § 7.02(b) that provides:

> [E]xcept as otherwise approved by all Managers, other than FMC and its Subsidiaries, *no Manager or Member may, directly or indirectly, (i) perform any services on behalf of any other special purpose acquisition company*, other than Pacific Special Acquisition Corp. or related entities or (ii) invest in any other special purpose acquisition company or public shell company other than as a passive investor.

Jt. App'x 213 (emphasis added).

According to Vogel, Boris and Kiev breached the agreement by forming a second SPAC without including him. The district court granted summary judgment because it concluded there was no genuine dispute of material fact about whether Defendants breached the Operating Agreement by starting their own SPAC. *See Vogel v. Boris*, No. 1:20-cv-09301(VM), 2023 WL 5471400, at *18 (S.D.N.Y. Aug. 24, 2023). The court reasoned that (1) the duration of the restriction against performing services for other SPACs was ambiguous, (2) extrinsic evidence overwhelmingly established that the restriction was intended to last only until the completion of the business combination resulting from the SPAC formed by Vogel, Boris, and Kiev, and (3) Defendants did not perform services for another SPAC before that time.

4

On appeal, we review the district court's grant of summary judgment without deference. *See Michel v. Yale University*, 110 F.4th 551, 555 (2d Cir. 2024). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(a).

We first consider whether § 7.02(b) is ambiguous. Under Delaware law, "[l]anguage is ambiguous if it is susceptible to more than one reasonable interpretation." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012). Rather, a contract is ambiguous "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

Vogel argues that § 7.02(b) is not ambiguous and that the parties intended that it remain in effect indefinitely, including after the FMC I business combination

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

was completed. Defendants disagree and argue that the provision expired upon the business combination of FMC I and ConvergeOne on February 22, 2018. The absence of an express term in the provision stating its duration lends support to Vogel's argument in light of the fact that other provisions in the contract expressly note whether they outlive the business combination. *See, e.g.,* Jt. App'x 213 (stating that, in some circumstances, the non-solicitation of contracts clause survives for "two years after . . . the dissolution and liquidation of FMC"); *id.* (stating that parties' obligation to present appropriate business opportunities to FMC continues until the earlier of the dissolution and liquidation of FMC or the closing of the business combination).

On the other hand, other contract terms suggest that the prohibition against providing services for other SPACs expires with the business combination. The initial purpose of Forum Capital Management was defined specifically with reference to the FMC SPAC; the parties' obligations to present appropriate business opportunities to Forum Capital Management—obligations closely tied to the obligation not to provide services to other SPACs, and described in § 7.02(a) immediately preceding § 7.02(b), ended with the earlier of dissolution and liquidation or the business combination of FMC; and the parties' obligations to

"devote substantially all of [their] full business time to the Company and its Subsidiaries"—also closely tied to the obligations reflected in § 7.02(b)—ended with the business combination. Jt. App'x 211.

The district court concluded that the contract was ambiguous because it "could reasonably be read to create a restriction of unlimited duration, or it could be read to create a limitation that expires with the termination of the Operating Agreement." *Vogel*, 2023 WL 5471400, at *9. We agree. There are two reasonable interpretations of § 7.02(b): it lasts in perpetuity, or it lasts until the business combination is complete.[2]

Turning to the extrinsic evidence, because "there is uncertainty in the meaning and application" of § 7.02(b), we "must consider the evidence offered in order to arrive at a proper interpretation of [the] contractual terms." *Eagle Industries, Inc.*, 702 A.2d at 1232.

---

[2] In reaching this conclusion, we rely on the contract as a whole and the cross-cutting inferences from different provisions. Delaware courts have suggested that silence alone may be sufficient for a court to consider extrinsic evidence. *See, e.g., Simon-Mills II, LLC v. Kan Am USA XVI Limited Partnership*, C.A. No. 8520-VCG, 2017 WL 1191061, at *19 (Del. Ch. Mar. 30, 2017) ("Where there is an ambiguity or contractual silence on an issue the Court will examine the extrinsic evidence presented by the parties"). The silence in § 7.02(b), along with the contract as a whole, support our conclusion here.

7

The undisputed extrinsic evidence reflects that the parties intended the restriction on outside SPAC activity in § 7.02(b) to expire with the business combination of FMC I on February 22, 2018. Vogel himself expressed this view to Boris and Kiev in December 2017, writing that § 7.02(b)'s prohibition on "being active with any other SPAC[] was specifically related to [Boris's] involvement with" the expressly named existing SPAC in that clause and that "the whole agreement is only governing *until a business combination is completed*." Jt. App'x 478 (emphasis added). Though his comments are not dispositive, they reflect the parties' understanding about the terms of the contract long before this litigation transpired.

It is also instructive that the preliminary term sheets circulated among the parties explicitly called for a limitation on outside SPAC activity only "until the merger is complete." Jt. App'x 361, 369, 387, 401, 406. Though Vogel argues that the omission of this clause from the final Operating Agreement indicates the parties did *not* mean to incorporate it into their agreement, he has offered no evidence to suggest that the omission was intentional. To the contrary, Defendants' contention that this omission was inadvertent finds ample support in the record.

8

Vogel's argument that the only reason the parties created a management company at the top of the corporate structure was to allow them to conduct multiple SPACs together does not alter our conclusion, and our interpretation is supported by the express terms of the contract. The Operating Agreement itself provides that the management company was "not intended to be a general partnership, limited partnership or joint venture." Jt. App'x 204. On the contrary, its stated "[i]nitial [p]urpose" was to "directly or indirectly own interests in, manage and operate Sponsor . . . , which will act as the sponsor of FMC." Jt. App'x 203. Although the evidence reflects that the parties contemplated the *possibility* of conducting subsequent SPACs together, it does not support Vogel's assertion that they agreed to be forever bound as partners in future SPACs absent unanimous agreement to disband. We thus conclude that § 7.02(b) was in effect until February 22, 2018, when the SPAC business combination with ConvergeOne occurred.

Finally, we turn to Vogel's argument that, even if § 7.02(b)'s restriction was in effect only until February 22, 2018—when the business combination occurred—Boris and Kiev nonetheless breached it by engaging in activity in December 2017 and January 2018. As discussed, § 7.02(b) prohibits managers from "directly or indirectly . . . perform[ing] any services on behalf of any other special purpose

9

acquisition company." Jt. App'x 213. Though there is evidence that Boris and Kiev began discussing the possibility of creating another SPAC together as early as December 2017, there is no evidence in the record that Defendants took concrete steps toward creating such a SPAC—and thus provided *services on behalf of* another SPAC—until after February 2018.

* * *

We have considered Vogel's remaining arguments and conclude that they are without merit.[3] Accordingly, the judgment of the district court is **AFFIRMED**.

<div style="margin-left: 40%">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

</div>

---

[3] Because of our conclusion that Defendants did not breach the contract with Vogel, we need not consider the parties' arguments regarding Defendants' alternative grounds for affirming, including that we should reform the contract because the omission of a durational limit on § 7.02(b) arose from a mutual mistake and that Vogel has not shown that he suffered cognizable damages.

10